121 N.J. Super. 409 (1972)
297 A.2d 583
WILLIAM S. RUDDEROW, WILLIAM X. BONNER AND MARYANNE A. BUSHA, PLAINTIFFS-RESPONDENTS,
v.
THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MOUNT LAUREL, THE TOWNSHIP OF MOUNT LAUREL, A MUNICIPAL CORPORATION, DEFENDANT, AND HANNAH A. ROSING, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 20, 1972.
Decided December 4, 1972.
*412 Before Judges COLLESTER, LEONARD and HALPERN.
Mr. S. David Brandt argued the cause for appellant Hannah A. Rosing (Messrs. Farr, Brandt, Haughey & Penberthy, attorneys; Mr. Stanley E. Zuzga, on the brief).
Mr. Malcolm Block argued the cause for intervenors Goodwin Homes, Inc. and C.G. Asociates (Messrs. Beck and Block, attorneys).
Mr. William B. Scatchard, Jr. argued the cause for respondents William S. Rudderow, William X. Bonner and Maryanne A. Busha (Messrs. Capehart & Scatchard, P.A., attorneys).
Mr. John W. Trimble argued the cause for the Township of Mount Laurel (Messrs. Higgins, Trimble & Master, P.A., substituted attorneys).
The opinion of the court was delivered by HALPERN, J.A.D.
This is an appeal from a final judgment setting aside a tentative approval granted by Mount Laurel Township to appellant for a planned unit development project known as "Cross Keys."
Since the opinion of the court below 114 N.J. Super. 104 sets forth the legislative history of New Jersey's Municipal Planned Unit Development Act (1967), N.J.S.A. 40:55-54 et seq., hereinafter referred to as P.U.D., it will not be repeated herein. The legislative goals are fully set forth in N.J.S.A. 40:55-55. In summary, P.U.D. is a recognition by the Legislature that the "Euclidean" (traditional) zoning approach, adopted in New Jersey about 50 *413 years ago, had outlived its usefulness, and that new and more creative flexible approaches had to be adopted to overcome "Euclidean" zoning inequities and deficiencies, and enable municipalities to provide for housing and other public needs for the present and reasonably foreseeable future. P.U.D. is the antithesis of the exclusive districting principle which is the mainstay of "Euclidean" zoning. The latter approach divided a community into districts, and explicitly mandated segregated uses. P.U.D., on the other hand, is an instrument of land use control which auguments and supplements existing master plans and zoning ordinances, and permits a mixture of land uses on the same tract (i e. residential, commercial and industrial). It also enables municipalities to negotiate with developers concerning proposed uses, bulk, density and set back zoning provisions, which may be contrary to existing ordinances if the planned project is determined to be in the public and individual homeowner's interest. It also recognizes the importance of encouraging and making it financially worthwhile for developers and investors to undertake P.U.D. projects by permitting a more intensified utilization of vacant land which is scarce and sky-rocketing in price.
The Legislature directed, "This act shall be construed most favorably to municipalities, its intention being to give all municipalities the fullest and most complete powers possible concerning the subject matter hereof. * * *" N.J.S.A. 40:55-67.
Mount Laurel Township, after extended study, adopted its comprehensive P.U.D. ordinance in December 1967, and patterned it after N.J.S.A. 40:55-54 et seq. It is apparent that a great deal of planning and thought went into the preparation of the ordinance so that what was primarily a rural farming community could be developed to meet "* * * increasing urbanization and of growing demand for housing of all types and design; to provide for necessary commercial and educational facilities conveniently located to such housing; * * *." In short, the ordinance sought to *414 utilize the P.U.D. approach as a zoning tool to accomplish the "Objectives of Development" more fully described in Article III-A of the ordinance. It is highly significant that N.J.S.A. 40:55-57(a) and Article III-A, par. A(2), of the ordinance go beyond the model statute suggested in the Urban Land Institute Technical Bulletin 52 (1965) which was designed for residential development and other nonresidential uses ancillary to the residential use. The state statute and the ordinance specifically provide:
(a) Permitted Uses. An ordinance adopted pursuant to this act shall set forth the uses permitted in a planned unit development, which uses may include and shall be limited to (1) dwelling units in detached, semidetached, attached, groups of attached or clustered or multistoried structures, or any combination thereof; and (2) any nonresidential use, to the extent such nonresidential use is designed and intended to serve the residents of the planned unit development, and such other uses as exist or may reasonably be expected to exist in the future, and (3) public and private educational facilities, and (4) industrial uses and buildings. * * *
Appellant made a preliminary application to construct "Cross Keys" as a P.U.D. project in April 1969. It was not until April 1970 that tentative approval was granted subject to 53 conditions. During that year "Cross Keys" was intensively discussed and reviewed by the township committee, the township planning board, the county planning board, the State Department of Community Affairs, the Mount Laurel School Board, the Mount Laurel Recreation Commission, the Municipal Utilities Authority, the township engineer, the township planner, and the township solicitor. In addition, five public hearings were held at which interested citizens were heard.
As tentatively approved, "Cross Keys" involved 162.6 acres of land at the intersection of Route 73 and Church Road, in Mount Laurel. It was designed to encompass five residential villages having a total of 975 individual housing units limited to garden apartments, medium-rise apartments, and town house apartments, occupying about 56.10 acres of the tract. *415 It also provided for a regional shopping mall to occupy about 45.8 acres; office buildings on about 12.2 acres; athletic fields; an indoor-outdoor swimming pool; controlled play areas; two lakes comprising about eight acres, and a community building. Although "Cross Keys" was in an area zoned industrial, no industrial use was contemplated as part of the project.
Our study of this voluminous record convinces us that "Cross Keys" was thoroughly considered by the township committee; it met the stringent standards fixed by the statute and ordinance; the township committee's tentative approval was reasonable and proper, and that the lower court too narrowly construed the underlying statutes and the powers granted the township committee therein.
Before considering the trial court's decision in setting aside the tentative approval granted appellant, it should be emphasized that our role in reviewing zoning ordinances, adopted pursuant to legislative grant, is narrow and limited. We do not judge the wisdom of an ordinance, but act only if the presumption of its validity is overcome by an affirmative showing of unreasonableness or arbitrariness. If the issue is debatable the ordinance must be upheld. Kozesnik v. Montgomery Tp., 24 N.J. 154, 167 (1957).
We turn first to the trial court's conclusion that "the ordinance is invalid in that it does not provide for specific districts as required by the statutes and Constitution of this State." We reiterate, one of the prime purposes of N.J.S.A. 40:55-54 et seq. was to get away from the "Euclidean" principle of blocking out designated districts for specified uses, and instead to permit prohibited uses within already established districts, and to permit deviations from bulk, density and set back requirements, if P.U.D. standards are met. Thus, Article III C-1 provides: "Any District within the Township may be used as sites for Planned Communities or Planned Unit Development." The obvious advantage emanating from the use of P.U.D. is its flexibility in enabling a municipality to solve some of its existing zoning problems, *416 and meet its future community needs with the land remaining for development. To require P.U.D. ordinances to establish specific districts wherein a P.U.D. may be authorized, would destroy the very purpose and philosophy for its creation. Such was not the legislative intent. We hold Laurel Township's P.U.D. ordinance, as enacted, to be valid.
Concededly, the regional shopping center provided for in "Cross Keys" was considerably larger than needed to serve the residents in the planned community. The trial court determined that "the statute and the ordinance do not permit the construction of nonresidential uses beyond those intended to serve the residents of the planned community." We disagree. Again, we find the trial court took too narrow a view of the enabling statute. Such construction by the trial court would continue existing, and create additional, "Euclidean" zoning problems and nullify the legislative intent. New Jersey Builders v. Blair, 60 N.J. 330, 338-339 (1972).
We construe the statute to authorize municipalities, where warranted, to permit commercial uses in a P.U.D. project beyond that needed for the residents within the planned community. Municipalities, as part of their comprehensive zoning plans, may properly anticipate and provide for the present needs of the public now residing in the areas surrounding the planned community, as well as the reasonably foreseeable future needs of the public they anticipate will move into the area and require servicing. Municipal boundaries should not be considered unscalable walls to prevent planned and reasonable growth of remaining available land areas. See Quinton v. Edison Park Development Corp., 59 N.J. 571, 578-579 (1971).
We adopt this statutory construction with full realization that it places a heavy responsibility upon local municipalities to carefully consider each application for a P.U.D. project on its own merits  always keeping foremost in mind the present and reasonably foreseeable future needs of the public in the complex society in which we presently live. Based upon the facts in this record, Mount Laurel Township's *417 authorization to erect the commercial area in question was a reasonable exercise of its delegated power under the enabling statute and ordinance.
Finally, we have considered the entire record and, contrary to the determination of the trial court, find adequate support therein for the township's findings of fact as required by N.J.S.A. 40:55-56(f). The miscalculation of acreage designed for commercial use is too insignificant to affect the legality and adequacy of the ordinance.
So, too, we find the ordinance adequately meets the requirements on designation of open spaces as required by N.J.S.A. 40:55-57(c). Here, again, it is obvious that the Legislature gave municipalities the right to determine the extent of open space deemed desirable and necessary. There is ample support in the record for the township's finding of fact that the open spaces designated in "Cross Keys" were adequate and reasonable.
The judgment below is reversed.