HOPKINS, J. T. C.
These cases are appeals from the judgments of the Morris County Board of Taxation as to the assessments of unimproved lots located in the defendant taxing district.
The original assessments, all of which were sustained by the Morris County Board of Taxation, were as follows:
Block 421, Lot 27 $ 53,400
Lot 28 51,200
Lot 29 1,195,000
Lot 31 7,400
Lot 33 566,600
TOTAL $1,873,600
At the trial, plaintiff withdrew the appeals relative to the 1976 tax year. Parties have stipulated that the common level of assessment for the tax year 1977 was the average ratio of 61.43 as promulgated by the Director, Division of Taxation, for that year. The 1978 and 1979 tax years, to the extent that discrimi *134 nation exists, will be governed by N.J.S.A. 54:2-40.4, generally referred to as Chapter 123 of the Laws of 1973, as amended.
The subject lots are contiguous and constitute a tract of 131.31 acres,, commonly known as the Dodge tract. The site is irregular in shape with frontage on Route 46, Parsippany Boulevard and Intervale Road. Topography is gently rolling, and it is improved with all municipal improvements and services.
In September 1977, the subject property was rezoned from a Research, Cultural and Commercial Center Zone (RCCC) to a Research, Cultural and Mixed Use District (RCM). That change was consistent with a township master plan. However, the new classification effectively modified the number of uses to which the subject property could be put.
The parties have stipulated that the adoption of the new zoning was reasonably expected as of October 1, 1976, the critical date for the 1977 tax year assessment, and have agreed that the property should be valued on the basis that the RCM zoning would be applicable for all contested years.
As of October 1,1976, the property was under contract to sell at $65,000 an acre, plus an additional sum of $60,000, to a purchaser contemplating construction of a regional shopping mall. A regional shopping mall could have been constructed under the RCCC zoning but could not be constructed under the RCM zoning.
The plaintiff’s position is that the implementation of the RCM zoning adversely affected the property to the extent that it made development impractical. Under these circumstances, plaintiff’s position is that, as of the critical assessment dates here involved, the property had a value of only $10,000 an acre. Defendant’s position, to the contrary, is that while the new zoning did cause a reduction in value, the property was still worth $45,000 an acre.
The RCM zoning of the subject tract was implemented under the authority of the Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq. That law was described in Levin, et al., v. *135 Twp. of Parsippany-Troy Hills, et al., 82 N.J. 174, 178-79, 411 A. 2d 704 (1979)[1] as follows:
The Municipal Land Use Law, NJ.S.A. 40:55D 1 et seq., was enacted in 1976 to reform the practices and procedures for land use throughout the State. Its sponsors characterized it as a comprehensive municipal land use enabling act, incorporating zoning, planning, site plan approval, master plan and official map legislation. The intent and purpose of the act are set forth in NJ.S.A. 40:551) 2. Basically, it is intended to encourage municipal action to guide the appropriate use or development of all lands in this State in a manner which will promote the public health, safety, morals and general welfare and to encourage coordination of the various public and private procedures and activities shaping land development with a view of lessening the cost of such development and to the more efficient use of land. The new Municipal Land Use Law supersedes the former Municipal Planning Act, NJ.S.A. 40:55-1.1 et seq. ...
The record herein discloses that the defendant was fully aware that the Municipal Land Use Law was about to be enacted and had been directing its efforts in planning for the community with it in mind.
It is well established that restrictions imposed by a zoning ordinance can have an adverse effect upon the value of property. Cappture Realty Corp. v. Bd. of Adjustments of Elmwood Park, 126 N.J.Super. 200, 313 A.2d 624 (Law Div.1973) aff’d 133 N.J.Super. 216, 336 A.2d 30 (App.Div.1975). See also The Appraisal of Real Estate (7th Ed.1978), at 118-119, wherein it is stated:
Zoning. Zoning is a legally imposed restriction on the uses of a site, but the site’s highest and best use may not necessarily be any of the uses designated by a zoning ordinance. Changes in uses permitted by zoning may substantially increase or decrease the value of the property in accordance with the permitted use....
Both parties, in the presentation of their case, recognize that the value of the subject property was decreased as a result of the zoning change. Plaintiff’s planning expert has testified that *136 the rezoning effectively prevented a rational development of the property and, following through on that conclusion, plaintiffs appraisal expert testified that the property’s value, under the RCM zoning, was $10,000 per acre. Defendant’s planning expert testified that the new zoning would not restrict the development of the property by a sophisticated developer. Defendant’s appraisal expert testified that the property was worth $60,000 an acre under the former zoning and was still worth $45,000 an acre under the RCM zoning.
The substance of plaintiff’s attack on the RCM zoning is that it has made the subject property “exceedingly difficult” to develop due to the many “unusual” and “speculative” provisions of the new zoning ordinance. Plaintiff complains of the initial requirement for “one plan or master development” for the entire tract in “the most minute kind of detail” taking place over a “long period of time in steps or phases”; the staging of the development which required commercial development as a condition precedent to residential development; the misunderstanding which could result from requiring development of a single balanced unit composed of integrated uses in concert with the physical and man-made “micro and macro environmental factors”; the requirement of strict adherence to the broad recommendations of the master plan; the limitation of commercial uses including the two-edged limitation that commercial uses shall not occupy more than 20% of the total nonresidential floor area and no more than 35% of the floor area of any one building; the emphasis on the development of “civic and municipal” uses which are of a public rather than a private nature; and the requirement of a contiguous 129 acres which the municipality apparently thought was the size of the tract; the “low density” requirements for residential development and the 25% requirement for open space; the requirements of economic estimates, including taxable values, as well as evidence of the financial ability of the developer to complete the plan; the required disclosure of operation characteristics and the presentation of such further reasonable evidence as the Board required, including a status report prior to review of a subsequent stage.
*137 Plaintiff argues that all of the aforesaid requirements lead to the conclusion that no rational developer would undertake or go into a deal with the uncertainties involved. Further, that the gross uncertainties involved in both the planning and the commitments that would have to be made would, from a practical point of view, render the private use of the RCM zone highly speculative. Plaintiff also states that if the development was stretched over a long time, it would require large up-front costs which would make the project difficult to finance; that the objectives of having the development stretched out, or phased, on the one hand and requiring assurance of all the details on the other, set up such practical difficulties as to preclude the property’s use; that such requirements are not rational planning; that the overabundance of public uses should be the subject matter of condemnation rather than zoning; and that practical development of the property is prohibited by the ordinance so that the property has an extremely limited potential.
Defendant, while recognizing that the RCM zoning does impose restrictions not theretofore required, has presented testimony in an attempt to explain the genesis of the RCM zoning as well as to point out that the obstacles testified to by plaintiff’s experts were more imaginary than real.
N.J.S.A. 40:551)1 et seq., under which the subject zoning ordinance was enacted, was the successor to, in part, N.J.S.A. 40:55-55, et seq., the substantive provisions of the Planned Unit Development Act otherwise known as P.U.D. The legislative history of that Act is set out in Rudderow v. Twp. Committee of Mt. Laurel Twp., 114 N.J.Super. 104, 274 A.2d 854 rev’d 121 N.J.Super. 409, 297 A.2d 583 (App.Div.1972). In that litigation the Appellate Division opinion recognized that the traditional zoning approach, adopted in New Jersey about 50 years prior thereto, “had outlived its usefulness, and that new and more creative flexible approaches had to be adopted to overcome ‘Euclidean’ [traditional] zoning inequities and deficiencies, and enable municipalities to provide for housing and other public needs for the present and reasonably foreseeable future.. .. ” 121 N.J.Super. at 413, 297 A.2d 583. See also Aloi, “Legal *138 Problems in Planned Unit Development: Uniformity, Comprehensive Planning, Conditions and the Floating Zone” 1 Real EstL.J. 5 (1972).
In reviewing the RCM zoning ordinance, as well as the testimony of the experts for both parties, it is apparent that the new zoning has definitely placed additional burdens on a party intending to develop the subject property. However, the history of land plannihg shows that the basic procedure provided in the RCM zoning ordinance is the planned type of development whose time has come. See Rudderow v. Mt. Laurel, supra. Accordingly, while the developer would not have the freedom that was previously available under the “Euclidean” type of zoning, the long range benefits to the community are deemed to more than offset the additional difficulties.
In going over the specific objections which the plaintiff has raised, the fact that the property under review must be approved for development by first disclosing a master plan for the full development is consistent with the Municipal Land Use Law. However, the ordinance contains a statement of objectives which, in and of itself, would certainly cause apprehension to a developer who would be required to submit a plan setting forth in “the most minute detail” that which he was proposing. When one considers the size of the area to be developed and the potential investment in time and of monies necessary, this language is extremely restrictive. While defendant’s position is that this language should not be considered as overruling standard application procedures as contained in Title 18 of the ordinance, the fact is that it is specifically stated in Title 19-22 R.C.M. of the zoning ordinance.
With respect to plaintiff’s contention that the development was required to be taken in steps or stages, the zoning ordinance does not so require it, but merely states that it may be done in that matter. Actually, a reading of the ordinance would indicate that the permission to complete the development in stages could benefit the developer by precluding the requirement that it must be done as one package.
*139 As to the requirement that commercial development proceed consistent with residential development, the court finds that this is consistent with land planning. There is nothing wrong with a policy to have an increase in commercial tax ratables coincide with increased municipal expenditures resulting from an increased residential population.
The provision, as stated in the statement of objectives in the ordinance, that it is the specific intent of the ordinance to “create ... a single balanced unit composed of the integrated uses developed in concert with the physical and man-made micro and macro environmental factors affecting the district”, is consistent with the general objectives of P.U.D. The term “micro and macro environmental factors” should not be considered as an obstacle to the development. Rather, said terms, while not specific in nature, must be considered as applicable to those environmental factors ranging from those affecting smaller areas of the tract to the factors that will affect the tract as a whole. Environmental impact studies are becoming quite common. Actually, the Municipal Land Use Law provides that it was the intent and purpose of the Act, inter alia, to preserve the environment; provide sufficient space in appropriate locations for a variety of uses and open space, both public and private, according to their respective environmental requirements; and to promote a desirable visual environment. N.J.S.A. 40:55D 2. See also N.J.S.A. 40:55I)-45 requiring that every ordinance providing for planned development shall require, prior to approval, findings, inter alia, that the proposed planned development will not have an unreasonably adverse impact upon the area in which it is proposed to be established.
The fact that the ordinance requires strict adherence to the broad recommendations of the master plan must be defined as meaning that the master plan is, indeed, a master plan and not merely a method of getting a preliminary approval of a plan which may easily be circumvented.
While the requirement in the ordinance that commercial uses shall not occupy more than 20% of total non-residential floor *140 area is not, in itself, deemed to be a restriction of such magnitude as to preclude rational development, the requirement that not more than 35% of the floor area on any one building be utilized for commercial purposes does require construction of buildings with the requirement that 65% or more be used for some other permitted purpose. It effectively precludes a freestanding commercial building. While defendant’s expert has testified that this type of structure is not unusual in areas outside of New Jersey, the fact that it is required by the ordinance has a depressing effect upon total development of the tract.
Plaintiff makes much of the fact that a civic or municipal center is permitted by the zoning ordinance. However, while permitted, it must be recognized that these type developments are not required, and that full commercial and residential development can be implemented within the terms of the ordinance. Further, the fact that the ordinance singled out the subject property for this type of development and that the same type development did not apply to any other tract in the community cannot, of itself, be meaningful. It is quite obvious that this particular tract, because of its location in the municipality, was considered of paramount importance from a developmental viewpoint, and the ordinance is consistent therewith. So also, the low density requirements for residential development and the 25% requirement of open space are fully within the authority of the municipal planners in planning for the health and welfare of its residents and the future of the community.
The requirements of economic estimates, including taxable values and the financial ability of the developer to complete the plan, as well as population characteristics and such further reasonable evidence that the board requires, including a status report, prior to review of a subsequent stage, are most appropriate from a planner’s point of view. Indeed, most of this information would be available to the developer or investor on an ongoing basis in order that the development may be constantly evaluated. Further, the financial ability of the developer is always of prime importance in a development of this type. See *141 N.J.S.A. 40:55D49 & -52 which confer rights to a developer who has had preliminary site plan approval or final approval.
The court has attempted to analyze those specific points raised by plaintiff in support of the proposition that the subject property has been placed in the position where no rational developer would develop it. I cannot agree with the reasons set forth by plaintiff. It is clear that there is certain language in the ordinance which was unnecessary to the implementation of the ordinance and which might cause a less sophisticated developer to avoid going forward with a development plan. The use of the term “most minute detail” is one such expression. While defendant’s expert had stated that the provisions of the overall zoning code with respect to methodology would control, the fact that that term has been used would cause concern.
In reaching a value for the subject property, I have concluded that the property can be developed by a sophisticated developer, but that its development would be such that the developer would have to recognize that it would require a large expenditure of money before being brought to its ultimate conclusion. Further, the fact that this total tract is owned by one entity is one of the reasons that it is really capable of being developed under the plan. If, per chance, one of the subject lots within the tract was acquired by some other party, there would then be the additional problem of having both parties agree upon a planned development which could be approved by the planning board.
Recognizing all this, the court must find that the plaintiff’s position with respect to the total impact of the ordinance is real but overstated. As such, plaintiff’s appraisal report, which, in depreciating the value of the property, placed great reliance upon many of the factors which this court has found to be consistent with P.U.D. types of development, is of little use.
In reviewing the appraisal approach of defendant’s expert, it is noted that the comparative approach which was used to place a value on the subject property utilized comparable sales of properties which were under more traditional type zoning. *142 None of the sale properties were zoned for mixed use. Further, the comparable sales of tracts of large acreage show a sales price substantially less than the $45,000 per acre value which has been testified to in this matter. A review of the defendant’s comparable sales, together with an analysis of the testimony of the appraiser, shows that he did not give sufficient weight to the fact that this was a large tract which could not be, for all practical purposes, sold in parcels prior to subdivision or development due to the subject zoning ordinance. Further, he improperly considered the subject zoning ordinance to be one that could easily be complied with by a sophisticated developer. The court has concluded that the ordinance has placed such restrictions on the subject property that development will be much more difficult than normal and, further, that the defendant’s comparables, even without the aforesaid restrictions, would not support the $45,000 an acre value.
In viewing all the evidence I find that the value of the various lots should be computed at $25,000 an acre.
Applying the agreed upon common level ratio of 61.43% for 1977 to the values found by the court results in assessable values in excess of the disputed assessments for all lots except Lot 31. As the defendant did not appeal the assessments to the County Board of Taxation, the assessments for all lots, except Lot 31, will remain undisturbed. See Matawan v. Tree Haven Apartments, Inc., 108 N.J.Super. 111, 118-119, 260 A.2d 235 (App.Div. 1969); Lamm Assoc. v. West Caldwell, 1 N.J.Tax 373, 392 (Tax Ct.1980).
Applying the agreed upon common level to the value of $8,750 (.35 acre X $25,000) for Lot 31 results in an assessed value of $5,375 for 1977.
As the values found for the years 1978 and 1979 for all lots, except Lot 31, result in assessable values which fall within the range provided by Chapter 123, as amended, the original assessments will be sustained. As to Lot 31, the Director’s Chapter 123 ratio will apply with the resultant assessed values of $5,163 and $5,338 for the tax years 1978 and 1979, respectively.
*143 The Clerk of the Tax Court will enter a judgment reflecting the following assessed values:
Block Lot 1977 1978 1979
421 27 $ 53,400 $ 53,400 $ 53,400
28 51,200 51,200 51,200
29 1,195,000 1,195,000 1,195,000
31 5,375 5,163 5,338
33 566,600 566,600 566,600

This was an opinion in a suit brought by the subject plaintiff in an effort to declare the RCM zoning invalid. The Supreme Court held that the Township Council had failed to enact the ordinance by a 2A majority vote of its full membership as required when the ordinance had been protested. While declaring the ordinance invalid, it stayed entry of the judgment for 90 days. During that period the ordinance was re-enacted without substantial change. Further, the parties stipulated that the aforesaid litigation would have no effect on value as of the critical assessment dates.