JOSEPH L. ZANIN, SUSAN M. EDWARDS, GEORGE D. EDWARDS, BARBARA TULKO, THE COMMITTEE FOR RESPONSIVE GOVERNMENT, A NEW JERSEY ASSOCIATION, MARK CHAS-MAR, ZANIN & SON INC., A NEW JERSEY CORPORATION, RESIDENTS OF WEEHAWKEN, INC., R.O.W., INC., FOR-WARD, A NON-PROFIT DELAWARE CORPORATION, PLAIN-TIFFS, v. STANLEY D. IACONO, MAYOR AND COUNCILMAN, JOANNE VENINO, COUNCILWOMAN, JAMES E. BRIDGE, COUNCILMAN, RICHARD TURNER, MANAGER, O. VINCENT GIUSTO, MAYOR'S AIDE, THE TOWNSHIP OF WEEHAWKEN, AND WEEHAWKEN PLANNING BOARD, DEFENDANTS.

Superior Court of New Jersey
Law Division Hudson County

Decided September 14, 1984.

*Robert B. Green* for plaintiffs.

*Seymour Margulies* for individual defendants (*Margulies & Margulies,* attorneys).

*Le Roy D. Safro* for Weehawken Tp.

*Thomas W. Dunn* for Weehawken Planning Board (*Wittman, Anzalone, Bernstein, Dunn & Lubin,* attorneys).

*Daniel E. Horgan* for intervenor Hartz Mountain Industries, Inc. (*Waters, McPherson, McNeill,* attorneys).

## OPINION

WEFING, J.S.C.

This opinion is written pursuant to R. 2:5–1(b), which permits the Court to supplement a previous oral opinion within 15 days of filing of a notice of appeal. This matter originally came before the Court on the adjourned return date of an order to show cause directing the defendants to show cause why Ordinance 8—1984 of the Township of Weehawken should not be stayed during the pendency of this action. The defendants are the Mayor of Weehawken, two members of the Township Council, the Township Manager, a mayoral aide, the Planning Board and the Township itself. The complaint upon which the order to show cause is based has five counts. The first seeks a declaration that the ordinance in question is void and invalid because it was passed pursuant to a defective master plan. The second count seeks a similar declaration, on the ground that property owned by plaintiff Zanin and Son Inc. was improperly and without notice omitted from the planned development option conferred upon the Special Waterfront Zone in the zoning ordinance in question. The third count also seeks such a declaration, on the ground that Township officials illegally interfered with efforts to file a protest, pursuant to *N.J.S.A.* 40:55D–63 against the proposed zoning ordinance. The fourth count is framed as an action under § 1983 of Title 42 of the U.S.Code; while the fifth and final count seeks a declaration that the Land Use Element of the Weehawken Waterfront Master Plan Amendment is itself void and invalid.

When the complaint was filed and the order to show cause sought, an application was made for temporary restraints; this application was denied for reasons then stated on the record. Plaintiffs are now seeking a preliminary injunction. They have also filed a motion seeking partial summary judgment on Count 1. The Planning Board has filed a cross motion to dismiss the complaint for failure to state a claim; the Township has filed its own motion for summary judgment, and the individual defend-

ants have filed a motion to dismiss the claims asserted against them. Finally, Hartz Mountain Industries Inc. (hereinafter "Hartz") has filed a motion for leave to intervene and for dismissal of the complaint. Supporting briefs and affidavits have been filed in support of these various motions.

It is necessary to set forth a certain amount of background to place this complaint and the resultant motions in their proper context. Weehawken's geographic and demographic characteristics are described in the master plan. The Township has an area of 7/10 of a square mile and a population (1980) of 13,168. It is located directly on the Hudson River and is naturally divided by the Palisades into two distinct areas, the upland and the waterfront. While the waterfront comprises 39% of the Township's total area, almost all of the population resides in the upland. Plaintiffs, in their complaint, describe the waterfront area as "all but abandoned." The economic deterioration of the waterfront followed upon the demise of several rail lines which had terminated there and the 1981 bankruptcy of Seatrain, which had conducted a container shipping operation at the southerly end of the Township's waterfront.

The Township wanted to encourage the development of the immensely valuable resource it had in its waterfront and, with an eye to this, began in March of 1983 to amend its master plan and zoning ordinance. It is the resulting master plan, adopted by defendant Planning Board on June 12, 1984 and the zoning ordinance adopted by the Council on July 19, 1984 which have spawned this litigation.

I

Before dealing with the substantive aspects, I shall treat Hartz Mountain's motion to intervene. Intervention as of right is governed under R. 4:33–1, which provides in pertinent part "Upon timely application anyone shall be permitted to intervene in an action if the applicant claims an interest relating to the property or transaction which is the subject of the action and he

is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest...." Hartz owns more than 40 acres of waterfront property in Weehawken which is directly affected by the challenged zoning ordinance. It acquired this property with the purpose of constructing a large commercial and residential development thereon. There is no doubt that its application to intervene was timely filed, since it was filed less than a month after the original complaint. As our Supreme Court has noted, "ordinally applications (to intervene) are treated liberally...." *State v. Lanza*, 39 *N.J.* 595, 600 (1963). *See, e.g., Allan-Deane Corp. v. Bedminister Tp.*, 63 *N.J.* 591 (1973), reversing 121 *N.J.Super.* 288 (App.Div.1972), and directing that non-resident applicants be permitted to intervene in a challenge to the township's zoning ordinance which had been pending for more than a year. The motion of Hartz to intervene as a party defendant is granted.

## II

The legal framework for this action may be found within *N.J.S.A.*, 40:55D-1 *et seq.*, our comprehensive Municipal Land Use Act which went into effect in 1976. *N.J.S.A.* 40:55D-28 authorizes a planning board to adopt a master plan "to guide the use of lands within the municipality in a manner which protects public health and safety and promotes the general welfare." The importance of a municipality's master plan is demonstrated by *N.J.S.A.* 40:55D-62, which makes exercise of the zoning power dependent upon adoption by the planning board of a land use plan element of a master plan. "[I]t is clear, under the new Land Use Act that before a municipality may enact a new comprehensive zoning ordinance, a land use plan must have been *prepared and adopted* by the planning board as part of a municipal master plan." [Emphasis in the original.] *Pop Realty Corp. v. Springfield Tp. Bd. of Adj.*, 176 *N.J.Super.* 441, 452 (Law Div.1980). Weehawken had adopted a land use plan and comprehensive zoning ordinance in 1976. If

it wished to replace this 1976 zoning, it was thus required to first enact a new land use plan.

The 1984 master plan, and the zoning ordinance subsequently adopted, used the device of planned development to stimulate the desired waterfront development. Planned unit development is defined within *N.J.S.A.* 40:55D–6 as "an area with a specified minimum acreage of ten acres or more to be developed as a single entity according to a plan, containing one or more residential clusters or planned unit residential developments and one or more public, quasi-public, commercial or industrial areas in such ranges of ratios of non-residential uses to residential uses as shall be specified in the zoning ordinance." The underlying philosophy of planned development was set forth in *Rudderow v. Mt. Laurel Tp. Comm.*, 121 *N.J.Super.* 409 (App.Div. 1972) at 412–413:

P.U.D. is a recognition by the Legislature that the "Euclidean" (traditional) zoning approach, adopted in New Jersey about 50 years ago, had outlived its usefulness, and that new and more creative flexible approaches had to be adopted to overcome "Euclidean" zoning inequities and deficiencies, and enable municipalities to provide for housing and othe public needs for the present and reasonably foreseeable future. P.U.D. is the antithesis of the exclusive districting principle which is the mainstay of "Euclidean" zoning. The latter approach divided a community into districts, and explicitly mandated segregated uses. P.U.D., on the other hand, is an instrument of land use control which augments and supplements existing master plans and zoning ordinances, and permits a mixture of land uses on the same tract (i.e. residential, commercial and industrial). It also enables municipalities to negotiate with developers concerning proposed uses, bulk, density and set back zoning provisions, which may be contrary to existing ordinances if the planned project is determined to be in the public and individual homeowner's interest. ·It also recognizes the importance of encouraging and making it financially worthwhile for developers and investors to undertake P.U.D. projects by permitting a more intensified utilization of vacant land which is scarce and skyrocketing in price.

The zoning ordinance in question, 8–1984, permits planned development within the areas designated as Industrial Park, Office Park, Outdoor Recreation and Special Waterfront Zones on the Weehawken Zoning Map dated July 2, 1984. Section (§) 17–10.4.3.1 delimits the permitted principal uses in a planned development as those permitted in areas designated Industrial Park, Outdoor Recreation, Office Park and Special Waterfront

Zones, as well as hotels or conference centers, festival market-places, residential, retail, service and "any other use which the Planning Board, in connection with the approval of a Planned Development, specifically determines by Resolution to be consistent with the standards of the Planned Development District." The ordinance requires a planned development to be at least 40 contiguous or adjacent acres, § 17–10.4.2, and specifies that at least 20% of the development area shall be devoted to common open space, § 17–10.4.5. It provides for a maximum Floor Area Ratio of .25 over all land, including land under water out to the pierhead line plus .60 over all land above water and piers in the planned development at the date of application. It also provides that this ratio shall be increased if the developer creates new land, additional parking, more transit seats, special pedestrian access from the top of the Palisades to the waterfront and/or affordable housing, § 17–10.4.6.2.[1] The ordinance further authorizes the Planning Board, in its discretion, to permit an increase in the Floor Area Ratio if the developer provides public or quasi-public land or facilities, § 17–10.4.6.2, but specifies that in no event shall the aggregate Floor Area Ratio in a planned development exceed 1.85 measured over the development area. § 17–10.4.6.4 The ordinance regulates the height of all buildings, structures and signs in a planned development to preserve the spectacular river views enjoyed by the upland portion of the township, § 17–10.4.7, and attempts to preserve the face of the Palisades from development, § 17–10.-4.2. It provides for common open spaces, § 17–10.4.9, parking, § 17–10.4.10, and regulates the number of dwelling units permitted in a planned development, § 17–10.4.11.

In conjunction with this ordinance, the Township Council also passed Ordinance 9–1984, the Land Development Ordinance Amendment, providing for preliminary and site plan approval of

---

[1]The Township's master plan notes that Weehawken is an Urban Aid Municipality and that the State Development Guide Plan places it in a Growth Area. *Cf. Southern Burlington Cty. NAACP v. Mt. Laurel Tp.*, 92 *N.J.* 158 (1984)

a planned development by the Planning Board. Among the myriad of details covered within this latter ordinance are the requirements for preliminary and final site plan approval for planned developments, § 16–8.6; § 16–8.7, procedures to provide for and maintain common open spaces, § 16–10.2(b) and (c), and provisions for development of this property in self-contained, self-sustaining stages, § 16–10.2(d). *See N.J.S.A.* 40:55D–49 and 52.

I shall now turn to plaintiff's motion for a preliminary injunction to enjoin enforcement of Ordinance 8–1984 while this suit is pending. I have noted above that plaintiff's request for a temporary restraining order has already been denied.

█ The standards which I must employ in determining whether to grant plaintiff's motion are settled. They were recently summarized by our Supreme Court in *Crowe v. De Gioia,* 90 *N.J.* 126 (1982), at 132–135. An applicant must demonstrate 1) that absent a preliminary injunction, he will suffer irreparable harm, 2) that his claim is based upon a settled legal right, 3) that the material facts are not disputed and 4) that he will suffer the greater hardship if injunctive relief is denied than the opponent will if it is granted.

██ In my view, plaintiffs have failed to meet these standards and, in particular, that the claim asserted is based upon a settled legal right, or as it is sometimes phrased, have demonstrated a likelihood of ultimately prevailing on the merits. In support of their position, plaintiffs assert that their claims are based upon violations of such traditional legal principles as separation of powers, reverse spot zoning and so on. A mere recitation of the underlying theories however, is insufficient to meet the required burden. Resolution of the plaintiffs' claims will require consideration of the powers which may be lawfully exercised by a Planning Board when considering an application for a planned development, a subject upon which there is little reported guidance in New Jersey. As Chief Justice Beasley stated in his classic exposition in *Citizens Coach Co. v. Cam-*

*den Horse RR Co.,* 29 *N.J.Eq.* 299, 305 (E & A 1878) "[T]he question ... raised is ... one of great delicacy and importance, for which, on the one hand, the respondent is to be secured in the enjoyment of the privileges conferred by its charter; on the other hand it is equally imperative upon the courts to jealously guard against every unauthorized diminution of the rights of the public. Such a claim cannot be assumed or decided in favor of a complainant on a motion for a preliminary injunction...."

This is particularly so when I consider the presumptive validity which I must accord to the challenged ordinance. As Justice Pashman said in *Hutton Pk. Gardens v. West Orange Town Council,* 68 *N.J.* 543 (1975):

> Municipal ordinances, like statutes, carry a presumption of validity. *Moyant v. Paramus,* 30 *N.J.* 528, 534–35 (1959); *Guill v. Mayor & Council of Hoboken,* 21 *N.J.* 574, 581 (1956). The presumption is not an irrebuttable one, ... but it places a heavy burden on the party seeking to overturn the ordinance. Legislative bodies are presumed to act on the basis of adequate factual support and, absent a sufficient showing to the contrary, it will be assumed that their enactments rest upon some rational basis within their knowledge and experience ... This presumption can be overcome only by proofs that preclude the possibility that there could have been any set of facts known to the legislative body or which could reasonably be assumed to have been known which would rationally support a conclusion that the enactment is in the public interest ... The judiciary will not evaluate the weight of the evidence for and against the enactment nor review the wisdom of any determination of policy which legislative body might have made. [Citations omitted.]

I have previously set forth the pertinent geographic and demographic features of the township; I am satisfied that Weehawken's attempt to meet its very pressing needs through the technique of planned development is a rational attempt to meet the development needs of the Township and provide for the public and private interests involved. Plaintiffs having failed to meet the requirements delineated in *Crowe v. De Gioia supra,* their motion for a preliminary injunction is denied.

### III

The remaining motions are plaintiffs' motion for summary judgment on Count 1 and defendants' cross motions for summary judgment and/or dismissal.

I shall deal with these seriatim. As to Count 1, plaintiffs argue that § 17–10.4.1 of the challenged zoning ordinance is void for two reasons—as an unconstitutional delegation of power and for vagueness. This section provides:

17–10.4 CRITERIA AND STANDARDS FOR PLANNED DEVELOPMENT

17–10.4.1 General Conditions: A Planned Development shall not be permitted in the Planned Development District unless:

a. Such Planned Development is, to the extent possible with due consideration for differing land ownerships, an integral part of a general plan or plans for development of the entire Planned Development District;

b. The applicant for such Planned Development can demonstrate that water, sanitary sewer, storm sewer and other utilities for the Planned Development will be adequate and complete for the Planned Development and each stage thereof and will be an integral part of a general plan or plans for development of all such utilities in the entire Planned Development District;

c. The applicant for such Planned Development can demonstrate that the means for vehicular and mass transit access to the Planned Development will be adequate and complete for the Planned Development and each stage thereof; will be an integral part of a general plan or plans for development of vehicular and mass transit access for the entire Planned Development District; and can be accomplished without substantial new congestion to streets and intersections in other districts of the Township;

d. The applicant for such Planned Development can demonstrate that the means of pedestrian access to the Planned Development will be adequate and complete for the Planned Development and each stage thereof; will be an integral part of a general plan or plans for development of pedestrian access for the entire Planned Development District; and will permit and encourage, to the greatest extent possible, integration of the Planned Development with other portions of the Township of Weehawken;

e. The applicant for such Planned Development can demonstrate that adequate provision has been made for an easement or other form of encumbrance along, or in close proximity to, the bank of the Hudson River, to allow access for riverbank maintenance and to allow passage along the riverfront by pedestrians and bicyclists. Such easement area shall have a minimum width of 30 feet and shall be provided with a paved walkway, provided however that the Planning Board may approve a lesser width at locations where 30-foot width is not practicable. If a bicycle path is to be included, such path shall be separated from the pedestrian walkway. Such easement shall be granted in perpetuity, without charge, upon such terms as the Planning Board or other governmental authority having jurisdiction shall deem appropriate to assure the continued maintenance thereof. Such easement area shall be designed so as to be contiguous with easement areas in other properties in the Planned Development District.

f. The applicant for such Planned Development can demonstrate that the Planned Development and each stage thereof will be a marketable development and will not have any substantial adverse fiscal impact on the Township;

g. The applicant for such Planned Development can demonstrate that such Planned Development and each stage thereof will not cause any substantially adverse environmental impacts; and

h. The applicant for such Planned Development meets all of the requirements for approval by the Planning Board of the Township, as set forth in this Ordinance and the Land Development Review Ordinance, and by all other governmental agencies having jurisdiction.

Plaintiffs complain that there are insufficient objective standards to guide the Weehawken Planning Board when an application for planned development is submitted to it and they place particular reliance upon the recent case of *Dunkin' Donuts of N.J. v. Tp. of North Brunswick*, 193 *N.J.Super.* 513 (App.Div. 1984), which held that a municipal planning board is without authority to prohibit or limit uses permitted by the particular zoning ordinance because of off-site conditions. The plaintiffs contend that the functions of a planning board in reviewing applications are basically ministerial and, in consequence, must be circumscribed by detailed and rigid standards contained within the ordinance.

I am unable to concur with plaintiff's argument. First, it is incorrect to describe a municipal planning board as purely "ministerial." Indeed there are instances in which a planning board acts in a quasi-judicial capacity. *Geiger v. Levco Rt. 46 Associates, Ltd.*, 181 *N.J.Super.* 278 (Law Div.1981).

More important, however, I am satisfied that plaintiffs misunderstand the underlying purposes of planned development and that a municipal planning board, confronted with an application for planned development, must have more flexibility and power than a board dealing with a routine application for site plan approval. I am satisfied that to hold otherwise would interfere with, rather than further, the intent of our Legislature in providing for planned development. *Rudderow v. Mt. Laurel Tp. Comm., supra.* None of the cases cited by the

plaintiffs involved the submission of an application for planned development under our statute and they are therefore all distinguishable from the present controversy.

 Neither am I able to concur that this section of the ordinance is void for vagueness.

> Legislative standards insure that the exercise of official discretion under a delegation of authority will not contravene the underlying goals which prompted the delegation. ... in determining whether local legislation is impermissibly vague, we are not confined to its literal terms. The meaning of such a general standard may be implied from "the entire act in the light of its surroundings and objectives." [T]he generality of a legislative delegation does not necessarily entail unbridled official discretion.... Legislative guidlines need only be as specific as their subject matter will permit. [*Dome Realty, Inc. v. Paterson*, 83 *N.J.* 212, 238-9 (1980).]

The challenged ordinance sets forth in some detail the items an applicant must demonstrate before being allowed to proceed with a planned development. It must be read, moreover, in conjunction with Ordinance 9–1984, passed the same day, which sets forth in great detail, the procedures for the planning board in considering an application for planned development. And, in accordance with the requirements of *N.J.S.A.* 40:55D–45, this ordinance requires that before the board may grant preliminary approval to a planned development it must find the following facts and conclusions:

1. That departure by the proposed development from zoning regulations otherwise applicable to the subject property conform to the zoning standards pursuant to the Municipal Land Use Law;

2. That the proposals for maintenance and conservation of the Common Open Space are reliable, and the amount, location and purpose of the common open space are adequate;

3. That provisions through the physical design of the proposed development for public services, control over vehicular and pedestrian traffic, and the amenities of light and air, recreation and visual enjoyment are adequate;

4. That the proposed Planned Development will not have an unreasonable adverse impact upon the area in which it proposed to be established; and

5. In the case of a proposed development which contemplates construction over a period of years, that the terms and conditions intended to protect the interests of the public and of the residents, occupants and owners of the proposed development in the total completion of the development are adequate.

Plaintiffs' motion for summary judgment on Count 1 of their complaint will therefore be denied.

The same logic persuades me, however, that the motion of defendant Planning Board for summary judgment should be granted. The nature of the arguments presented on the validity of these ordinances do not require a plenary hearing for factual development as is suggested in *Odabash v. Dumont*, 65 *N.J.* 115, 121 (1974), and *Jackson v. Muhlenberg Hospital*, 53 *N.J.* 138 (1969). Both plaintiffs and defendants, during the argument of this matter, represented that an evidentiary hearing would present no further facts than those before me now. In such a posture, the public interest demands a quick resolution to the challenge made to this ordinance. A delay would serve no one's interest, least of all the public. Summary Judgment will be entered for defendant Planning Board on Counts 1 and 5 of plaintiffs' complaint.

The remaining allegations of plaintiffs' complaint involve questions of material fact and were not encompassed within the issues presented for decision by this opinion.