No. 12769

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

STATE OF MONTANA, ex rel RUSSELL CENTER,
a Limited Partnership Comprised of John
W. Martin Construction et al.,

Relator and Appellant,

-vs-

CITY OF MISSOULA, MONTANA, a Municipal Corporation,
City Council of the City of Missoula et al.,

Defendants and Respondents.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable Edward Dussault, Judge presiding.

Counsel of Record:

For Appellant:

Boone, Karlberg & Haddon, Missoula, Montana
Sam E. Haddon argued and Thomas H. Boone appeared,
Missoula, Montana

For Respondents:

Worden, Thane, Haines & Williams, Missoula, Montana
Jeremy G. Thane argued, Missoula, Montana
Fred C. Root and Victor F. Valgenti, Missoula, Montana

---

Submitted: November 22, 1974

Decided: MAR 3 1 1975

Filed: MAR 3 1 1975

_Thomas J. Kearney_
Clerk

Honorable Gordon Bennett, sitting for Chief Justice James T. Harrison, delivered the Opinion of the Court:

Relators appeal from the judgment of the district court, Missoula County, denying and dismissing their petition for various writs of mandate and prohibition and from that court's orders denying motions to amend and supplement findings of fact and conclusions of law and for a new trial. The cause was tried to the court without a jury.

Relators, appellants here, are the owners of a 38.79 acre tract in Missoula, 32.78 acres of which were zoned "C-1 Commercial", the remaining six acres were zoned "Planned Unit Development (P.U. D.)-Residential." On October 15, 1973, the Missoula city council adopted a resolution of intention to rezone the "C-1 Commercial" area to "R-2" (residential), and referred the matter to its zoning commission.

On or about October 24, 1973, appellants applied to the city for a building permit and an off-street parking permit for a shopping center to be constructed on their property. The area zoned P.U.D. was to be used for off-street parking. On Friday, November 2, 1973, the city building inspector issued a building permit to appellants, without an off-street parking permit. The following Monday, November 5, 1973, the city council, meeting in regular session, revoked by resolution the building permit. By letter dated November 6, 1973, an assistant building inspector advised appellants that the building permit had been revoked by order of the city council.

Appellants filed this action November 9, 1973, seeking, inter alia, writs of mandate directing respondent city of Missoula to issue a new permit to replace the revoked building permit and a parking permit as applied for; as well as writs of prohibition against interference with the issuance of such permits.

No such relief could be rendered by the district court, nor can it be by this Court.

- 2 -

A writ of mandate is authorized solely for the purpose of requiring public officials to perform a clear legal duty. Section 93-9102, R.C.M. 1947. Courts may enjoin by writ of prohibition only such acts by public officials as are clearly unlawful. Section 93-9201, R.C.M. 1947.

The district court concluded the building permit issued by the city building inspector was void for three reasons:

1. It was issued without reasonable compliance with Chapter 32 of the Missoula City Code dealing with parking required as a condition for issuance of a building permit under another section of the Code.

2. Use of the area zoned P.U.D.-Residential for off-street parking, as proposed in the plan presented in the application for the permit, would violate a city zoning ordinance.

3. Authority granted in the permit to use the P.U.D. area for off-street parking constituted a rezoning of the area without meeting the requirements for rezoning set forth in section 11-2705, R.C.M. 1947.

We agree with the district court on all three reasons.

Reason 1: Section 5-1, Chapter 5, of the Missoula City Code provides in part:

"The city building inspector shall issue the building permit only after determination that the building, the survey and the application comply with the terms of this chapter and Chapter 32."

Chapter 32, Section 32-14.1 of the city code, provides in part:

"SECTION IV: PLAN REQUIREMENTS: Two (2) copies of the plans of the proposed parking area shall be submitted to the City Building Inspector's office at the time of the application for building permit for which the parking area is required. Said plans shall be drawn to a scale of not less than one (1) inch, equal to fifty (50) feet, showing locations of all pertinent buildings, driveways, streets, parking arrangements, circulation patterns, traffic signs and markings, lighting, landscaping, pedestrian walks, curbing, drainage and other pertinent features."

On November 1, 1973, one day before the building inspector approved the building permit, the city engineer informed him by written memorandum that the plans for the parking area

- 3 -

submitted with the building permit application were deficient in respect to these features required to be set forth by Section 32-14.1: (1) scale of drawing, (2) drainage, (3) landscaping, (4) lighting, and (5) parking arrangements.

The existence of these deficiencies in the application as submitted and as it stood on that day is essentially uncontradicted in the evidence, and there is no evidence they had been corrected by the next day when the building permit was approved.

Reason 2. The building permit authorized an unlawful land use in violation of a zoning ordinance. The six acre P.U.D.-Residential area authorized by the permit to be used for parking had been duly zoned by the city council under City Ordinance No. 1512, dated August 14, 1972, pursuant to City Ordinance No. 1306 which authorized such rezoning. Ordinance No. 1512 was in full force and effect on the day the building permit was approved. The 1972 petition for rezoning, required by Ordinance No. 1306, included a plan for residential development in the area. Ordinance No. 1306 requires that construction follow the plan as submitted and approved.

Section 5-3 of the Missoula City Code adopts the "Uniform Building Code", of which Sec. 302(a) provides:

> "The application, plans, and specifications filed by an applicant for a permit shall be checked by the Building Official. Such plans may be reviewed by other departments of the city to check compliance with the laws and ordinances under their jurisdiction. If the Building Official is satisfied that the work described in an application for permit and the plans filed therewith conform to the requirements of this Code and other pertinent laws and ordinances, and that the fee specified in Section 303(A) has been paid, he shall issue a permit therefor to the applicant."

Clearly the plan submitted by appellants, providing for parking for a commercial development in an area then zoned for residential development, did not conform to the city zoning ordinances. Under the above cited section of the building code, the building inspector was not authorized to approve the plan. If the six-acre tract were to be excluded from the plan as providing for a use in violation of the ordinances, then the whole plan would fail because, as the evidence showed, without this area for parking the project would not

- 4 -

meet the parking space requirements for a shopping center as set forth in the city codes. Section 32-14.1.

Reason 3. The permit was void because it had the effect of rezoning the six acre P.U.D.-Residential tract without complying with section 11-2705, R.C.M. 1947. There can be no question but that the permit authorized a distinct change in use of the tract from residential development, as authorized by the ordinance noted above, to commercial parking. To effect such a change, the provisions of section 11-2705, R.C.M. 1947, together with section 11-2704, should have been implemented. This would have required notice of the proposed change, a hearing, and, in case of protest, a favorable vote of three-fourths of the city council. These requirements were not met in any way, prior to the issuance of the permit.

A building permit issued in violation of a municipal ordinance or other statute is void ab initio and creates no legal rights. Weiner v. City of Los Angeles, 68 Cal.Rptr. 733, 441 P.2d 293; Ramaker v. Cities Services Oil Co., 27 Wisc.2d 143, 133 N.W.2d 789; Simeone Stone Corp. v. Oliva, 350 Mass. 31, 213 N.E.2d 230; Bingham v. City of Flint, 14 Mich.App.377, 165 N.W.2d 628; Plum v. City of Healdsburg, 237 C.A.2d 308, 46 Cal.Rptr. 827.

Appellants argue that the uniform building code having been adopted by the city of Missoula, Section 302(e) thereof makes revocation of a building permit the exclusive domain of the building inspector who issued it. That section provides:

> "(e) Suspension or Revocation. The Building Official may, in writing, suspend or revoke a permit issued under provisions of this Code whenever the permit is issued in error or on the basis of incorrect information supplied, or in violation of any ordinance or regulation or any of the provisions of this Code."

Section 302 is permissive and sets forth the basis for revocation and the means of notice thereof. It does not explicitly, nor impliedly, leave sole discretion with "The Building Official" as to whether the permit will be revoked. If the Missoula city council ever made a specific or exclusive delegation of its power to revoke building permits, no evidence to that effect was offered

the district court. For lack of any such evidence, we would conclude the city council has reserved to itself the power granted in section 11-904, R.C.M. 1947:

> "The city or town council has power: To fix the amount, terms and manner of issuing and revoking licenses; but the council may refuse to issue licenses when it may deem it best for the public interests."

Here, the assistant building inspector, acting for the building inspector, who presumably is the "Building Official" referred to in Section 302(e) of the Uniform Building Code, seems essentially to have fulfilled his role under that section. He gave notice of the revocation of the building permit. He cited the city council's resolution as his authority for the revocation, but he could just as well have given as his reason the fact that the permit was issued in violation of the ordinances referred to above. The permit being void ab initio, the form of the notification, the reasons given in the notice or even the procedure followed in revocation are not critical. The critical fact is that a valid permit was never issued. The "revocation" by the city council and the notice thereof by the assistant building inspector are more matters of form than substance and constitute mere recognition or affirmation that the permit was and is invalid for all purposes. In substance, the city council refused to issue the permit and this Court is asked to order it to do so. But, under the last clause of section 11-904, the City is empowered to so refuse in the public interest and, again, there is no evidence that the Missoula City Council has delegated that power to any person or agency. There is copious evidence in the transcripts of the council's meetings that it deemed the refusal to be in the public interest.

In addition to its finding on the building permit, the district court also found the appellants "failed to provide the necessary information in its application for an off-street parking permit, as required by ordinance, and therefore may not compel the issuance of a permit by this action." On the basis of the substantial evidence before this Court we concur.

As noted, Section 32-14.1 of the Missoula City Code sets forth the requirements for issuance of a parking permit. Under Section V of that section, parking plans must be reviewed by the building inspector and the city engineer to insure conformity to the requirements for off-street parking set forth in other portions of the section. The city engineer is charged with reviewing and approving "the proposed traffic control for the off-street parking areas and its impact to City street traffic prior to the issuance of the permit." In Section VI, certain minimum standards for off-street parking areas are set forth.

At the time of trial in the district court appellants had not supplied the city engineer or the building inspector with data required by Missoula Ordinance 1543 to be supplied for their consideration of the parking permit. On November 12, 1973, the city engineer set forth the deficiencies in the application in a letter to appellant John W. Martin Construction Co.. From the data that was supplied, the city engineer concluded the traffic circulation was inadequate because: the kind of surfacing proposed for the parking area was not indicated; data on drainage was insufficient; data which was supplied indicated to the city engineer that the drainage system proposal did not meet ordinance requirements; screening of the parking area, required by the ordinance, was not described; and, no description of lighting or signs was given, as required by the ordinance.

It is true that all negotiations between appellants and the City in regard to the parking permit were suspended on and after November 5, 1973, because of the city council's action that day revoking the building permit and ordering that no parking permit be issued. But, the district court could not supply the missing data, much less determine its adequacy for the city engineer or the building inspector. It could not therefore direct the issuance of a parking permit, nor forbid the city council to deny its issuance.

The district court found that Section V of Ordinance Section 32-14.1 of the Missoula City Code, enacted as a part of City Ordinance 1543, is valid. Appellants disagree, maintaining it unconstitutional on its face and as applied in this case.

Section V provides:

"PLAN REVIEW: The proposed plans will be reviewed by the Building Inspector and City Engineer to insure conformity to requirements contained in this Section. The City Engineer shall review and approve the proposed traffic control for the off-street parking areas and its impact to City street traffic prior to issuance of the permit."

Appellants insist this provision violates the due process provisions of the Fourteenth Amendment to the United States Constitution and Section 17, Art. II of the Montana Constitution; Section 29, Art. II of the Montana Constitution, prohibiting the taking of private property for public use without just compensation; and Section 31 of Art. II of the Montana Constitution, prohibiting ex post facto laws and laws impairing the obligation of contracts. Appellants argue this is so because the cited section purports by its language to grant to the city engineer authority to withhold issuance of a parking permit without reference to any standard set forth in the ordinance. This, they maintain, is an unconstitutional delegation of authority [of] the city engineer amounting to a delegation of legislative power.

We find no such unconstitutional infirmity in Section V. In its first sentence copious guidelines are laid down for the building inspector and city engineer by reference to specific requirements set forth in the rest of the ordinance. In its second sentence it assigns to the city engineer a fact finding function, i.e. he must discover what impact the proposed plan will have on street traffic and on that basis approve or disapprove of the plan. This calls for an exercise of expertise and judgment that would be extremely difficult to define satisfactorily in an ordinance or statute and for which the city council must rely on the city engineer.

- 8 -

In State ex rel. Bennett v. Stow, 144 Mont. 599,619, 399 P.2d 221, this Court said:

"It would appear that an administrative officer, bureau, agent or employee of the City may be invested with the power to ascertain and determine whether the qualifications, facts, or conditions comprehended in and required under the provisions of an ordinance exist, and whether the provisions of the ordinance so fixed and declared have been complied with. In our view, the fact that such an ordinance does impose the duty of ascertaining facts relating to public health, safety, welfare, and so on, upon an administrative officer, bureau, agent or employee of the City cannot be said to confer legislative power upon such employees. In Montana, where members of city councils are not full-time officials, they must depend upon administrative officers, bureaus, agents and employees to do the leg-work necessary in any type of investigation and, further, we would assume that those to whom is delegated this labor would be those familiar with the business, the functions of the City with respect thereto, and the provisions of the ordinance which must be complied with."

Constitutional provisions should not be so interpreted as to impose unreasonable requirements upon municipalities for the specification of its officials' duties with regard to functions that are necessarily discretionary. An ordinance that attempted to define in detail what "traffic impact" is would either be so technical as to be unworkable or would fall short of being sufficiently comprehensive.

Nor do we find the application of Section V by the city engineer to be unconstitutional. In this case the city engineer insisted that a traffic survey be made by appellants to assist him in determining the traffic impact. The proposed project encompassed 410,000 square feet of leaseable area, more area than existed in all of "downtown" Missoula at that time, with three major tenants and approximately 50 specialty shops and stores within a climatically controlled and covered mall. Paved and lighted parking for in excess of 2,800 cars was planned. The project was in the vicinity of a school, another major shopping center, and two major thoroughfares. It is not unreasonable that the city engineer felt the necessity for some kind of survey to determine traffic impact. On the contrary, it would seem he would be remiss in not doing so. To forbid the city engineer to require a traffic survey under the circumstances present here would be to forbid him to carry out the

responsibility given him under the ordinance and to forbid the City to carry out the responsibility it has under Montana law to protect the safety and welfare of its citizens.

Finally, appellants ask this Court to apply the doctrine of estoppel against the City of Missoula, and on such basis order the City to reissue the building permit and issue the parking permit.

Several facts are pertinent: On August 31, 1973, the city building inspector advised Mr. Boone, attorney for appellants, by letter "As to using the now zoned PUD to the north of this project, for a parking lot I would not be able to answer." On September 26, 1973, the building inspector further advised Mr. Boone:

> "As you know, a portion of the property located to the North of the project is zoned 'PUD'. While this zoning is applicable to the specific project proposed by Mr. William Curran of Curran Construction Co., Inc. I have been advised by the City Attorney that this area which is zoned 'PUD' is to be used for parking purposes in connection with the shopping center. A copy of the letter by Fred C. Root, City Attorney for the City of Missoula is attached for your information."

The city attorney's letter referred to, dated September 25, 1973, states in part:

> "You have requested my opinion as to whether you may authorize the building of a structure which qualifies under C-I or C-II zoning ordinances and which building would be adjacent to an area zoned P-U-D and allow the builders to use a portion of the P-U-D zoned area for a parking lot.
>
> "Your question predisposes that both areas are in a single ownership. Where this situation exists, you may authorize such a structure and permit the builder to use an area in the P-U-D zone to meet the parking requirements of the structure."

On October 15, 1973, Mr. Boone appeared and participated on behalf of appellants at the city council meeting which culminated in the passage of the resolution of intention to rezone the area, which carried 9 to 1, with one member absent and another not voting. It will be recalled the building permit was issued November 2, 1973, (without the parking permit being approved) and the city council ordered it revoked on November 5, 1973.

To summarize, Mr. Boone, appellants' attorney and presumably their agent, was advised by the City on August 31 that it was unknown as to whether the P.U.D. area could be used for parking. He was advised on September 25 that in the opinion of the city attorney if both the commercial area and the P.U.D. area were in single ownership

the building inspector could permit the builder to use the P.U.D. area to meet parking requirements, nothing whatever was said about complying with zoning ordinances and building codes. On October 15 Mr. Boone was made personally aware that the city council did not approve of the commercial development and intended to rezone the area to residential. A Saturday and a Sunday passed between the time the building permit was issued and the time it was revoked. There is no evidence of any change in appellants' position over that weekend.

On the other hand, it is clear the proposed project would have an enormous impact on the city of Missoula and a particularly acute impact on the traffic, safety and commerce of the area in which it was to be located. A reading of the lengthy transcripts of meetings of the city council makes it patent that a healthy majority of its members were stoutly opposed to the project before and after the building inspector issued the building permit, on the ground the surrounding area was incapable of handling the development. The entire record makes it clear that appellants, during September and October 1973, were in a race to beat impending rezoning.

Under these circumstances should the doctrine of equitable estoppel be applied to the municipality? We think not.

Prior to the issuance of the building permit, appellants had nothing that would rise to the dignity of an assurance from the City or any of its agents that a permit would be issued in any event or that the P.U.D. area could be used for parking. Up to this point expenditures could not be said to have been made in reliance on any assurance from the City. It was the ordinary case of a developer spending its money in the hope that approval would finally be obtained. To hold in such a case that negotiations between the developers and the City authorities somehow commits the City to the granting of authority, would have the effect of discouraging all such negotiations in the future, a highly undesirable result.

As there is no showing of change of position on the part of appellants between the time the permit was issued and the time it was revoked, estoppel could not be invoked for this period.

Even if appellants had in fact relied upon representations of the City to its detriment, which we hold is not the case, there would remain the matter of balancing the interest of the municipality against that of appellants. In State ex rel. Barker v. Town of Stevensville, ___Mont._____, 523 P.2d 1388, 1391, 31 St. Rep. 496, 500, it was held:

> "In 2 Municipal Corporation Law, Antieau (1973 Ed.) §16A.06, a test is suggested for circumstances in which the doctrine should apply:
>
>> "'It is suggested that there should be no general rule that estoppel is not to be applied in police power situations. Rather courts should be encouraged to weigh in every case the gravity of the injustice to the citizen if the doctrine is not applied against the injury to the common weal if the doctrine is applied in that case. Where any danger to the public is slight and a citizen has made a good faith and substantial change in position in reasonable reliance upon the conduct or representations of municipal officials and agents, several courts have estopped the local government from exercising their "police power" in a way inconsistent with their prior representations or actions.'
>
> "We agree with this approach. In cases of this kind, there should be a balancing of the municipal corporation's unwarranted assumption of risk of liability for acts or statements of its agents or employees made in excess of their authority against the harm done to good faith, innocent and unknowledgeable third parties who act in reliance upon those representations. It follows that each case will necessarily have to be judged upon its own unique factual situation."

The factual situation here leaves no doubt that the equitable balance is in favor of the municipality.

The judgment of the district court is affirmed.

Hon. Gordon Bennett, sitting for
Chief Justice James T. Harrison.

We Concur:

_John Conway Harrison_

_Frank I. Haswell_

_Gene B. Daly_

_Wesley Castles_
        Justices.