Strafford
No. 90-072

## Robert D. Hussey and U.S. Aggregates, Inc.

### v.

## Town of Barrington

February 24, 1992

*Gallagher, Callahan & Gartrell P.A.*, of Concord (*Donald E. Gartrell* on the brief and orally), for the plaintiffs.

*Casassa & Ryan,* of Hampton (*Peter J. Saari* on the brief and orally), for the defendant.

*Taylor, Keane, Blanchard, Lyons & Watson P.A.*, of Portsmouth, for the intervenors Guilio and Norma Franceschini, adopted brief of the defendant.

*Wyskiel, Boc & Reid P.A.*, of Dover, for the intervenor Martin Lessard, adopted brief of the defendant.

HORTON, J. In this gravel pit case, the plaintiffs appeal an order of the Superior Court (*Dickson*, J.), made at the close of the plaintiffs' case, which dismissed their challenge to a 1989 decision of the Town of Barrington Zoning Board of Adjustment (the ZBA). This decision denied plaintiff Robert D. Hussey a use variance to excavate sand, gravel, and stone from a parcel located in an area of Barrington zoned for residential and agricultural uses. In contending that the superior court erred in upholding the ZBA's decision, the plaintiffs assert that the decision was unreasonable and deprived them of vested interests under a use variance granted in 1987. For the reasons stated herein, we affirm the superior court's decision.

Plaintiff Hussey owns property in the Town of Barrington consisting of two contiguous parcels, "A" and "B," located in an agricultural-residential zoning district. After unsuccessfully applying in May 1987 for a use variance to operate a gravel pit, Hussey applied for and obtained, in August of that same year, a use variance covering parcels A and B. This variance allowed him to excavate sand, gravel, and stone. The difference between the earlier, rejected, gravel pit application and this later, successful, application was that Hussey, a forester by trade, characterized the excavation operations in the later application as incidental to eventually reclaiming parcel B as a timber lot.

The owners of land abutting parcel B, which was to be the site of the actual excavation, received statutory notification of this new 1987 application. *See* RSA 676:7, I(a). Because Hussey had failed to supply the town with their names, three owners of land abutting Hussey's other parcel, parcel A, which was contiguous to parcel B and was intended to be the site of operations necessary for the excavation on parcel B, were not notified. At the 1987 hearing, one of the parcel B abutters informed the ZBA and plaintiff Hussey of this omission. Although no direct appeal was ever taken from the grant of the 1987 variance, *see* RSA 677:2 (Supp. 1990), the parcel A abutters who were not notified, along with a group of concerned citizens, eventually filed a "Petition to Reopen, Reconsider and Vacate Variance" with the town in late October of 1988.

Several months after the granting of the 1987 variance, Hussey began excavation operations on parcel B in conjunction with plaintiff/intervenor, U.S. Aggregates, Inc. A haul road on parcel A provided access to parcel B and was used by the plaintiffs to truck out standing timber and the excavated sand, gravel, and stone. Various improvements were made on parcel A, including the installation of a large truck-weighing scale and a trailer office. The record contains

evidence of expenditures by both plaintiffs in preparing parcels A and B for the excavation operation. The record also contains evidence of revenues derived from their sale of the wood and earth materials removed during this preparation.

In 1989, the ZBA, citing the lack of proper notice to the abutters of parcel A, ordered Hussey to reapply for a variance for his excavation. When he was slow in submitting this application, the town filed a petition to enjoin the excavation project, and a temporary injunction was granted. Thereafter, the ZBA received the application and reviewed it at a public hearing, where the same board members who had ruled upon Hussey's 1987 application unanimously agreed, on the basis of new evidence, to deny the application. The ZBA found that the proposed use would not be in the best interest of the public and would diminish the value of the surrounding properties. A request for rehearing was also denied.

Pursuant to RSA chapter 677, Hussey, with U.S. Aggregates, Inc. as an intervening plaintiff, appealed the denial of the motion for rehearing to the superior court in July 1989. The town moved to make permanent the temporary injunction, and this issue was consolidated with Hussey's appeal. Both actions were tried as a single case. At a bench trial in 1990, the superior court granted the defendant's motion to dismiss at the close of the plaintiffs' evidence and, based on that action, also granted the town's request for a permanent injunction.

The plaintiffs have briefed two issues before this court: (1) whether they have vested rights under the 1987 variance which could not be annulled by the action of the ZBA in 1989; and (2) whether the ZBA's decision was unreasonable because it denied a variance in 1989 after a review of what the plaintiffs characterize as essentially the same evidence that the same ZBA members heard when approving the variance in 1987.

 In order to address the plaintiffs' two contentions, we must decide whether the trial court properly granted the town's motion to dismiss at the close of the plaintiffs' case. In *Renovest Co. v. Hodges Development Corp.*, 135 N.H. 72, 78, 600 A.2d 448, 452 (1991), we held that:

> "[W]hen the trial judge is sitting as the trier of fact, he or she appropriately may make findings of fact at the close of the plaintiff's case-in-chief, and may use such facts to determine whether the plaintiff has established the case by a preponderance of the evidence. On appeal, we will not overrule

these findings of fact, unless they are clearly erroneous, nor will we reverse the dismissal based thereon unless it is inconsistent with the findings or otherwise contrary to law."

Because this is a zoning case, "the standard for review of this court is not whether we would find as the trial court did, but whether the evidence reasonably supports the finding." *Condos East Corp. v. Town of Conway*, 132 N.H. 431, 434, 566 A.2d 1136, 1139 (1989) (quoting *Cutting v. Town of Wentworth*, 126 N.H. 727, 728, 497 A.2d 839, 840 (1985)). We will therefore uphold the trial court's decision on appeal unless it is not supported by the evidence or is erroneous as a matter of law. *Mudge v. Precinct of Haverhill Corner*, 133 N.H. 881, 885, 587 A.2d 603, 606 (1991). Further, in proceedings before the superior court, "[f]indings of a zoning board of adjustment, upon all questions of fact properly before it, are deemed to be *prima facie* lawful and reasonable." *Peter Christian's v. Town of Hanover*, 132 N.H. 677, 681, 569 A.2d 758, 762 (1990) (citing RSA 677:6). In turn, the review by the superior court is not to determine whether it agrees with the zoning board of adjustment's findings, but to determine whether there is evidence upon which they could have been reasonably based. *See id.* In this case, the trial court confirmed the findings of the ZBA when it ruled that the plaintiffs had failed to introduce sufficient evidence to rebut this presumption of validity. Based on these findings, the trial court might properly dismiss the appeal.

■■ One aspect of the consideration of plaintiffs' vested rights argument is whether the ZBA had jurisdiction to grant the 1987 variance. A necessary prerequisite to a zoning board of adjustment's jurisdiction to consider a request for a variance is that any statutory notice procedure be satisfied. *See Daniel v. B & J Realty*, 134 N.H. 174, 176, 589 A.2d 998, 999 (1991) (literal compliance with the procedural deadline for filing an appeal is a mandatory prerequisite to establishing jurisdiction in the zoning board of adjustment). RSA 676:7, I, in part mandates that:

"Prior to exercising its appeals powers, the board of adjustment *shall* hold a public hearing. Notice of the public hearing *shall* be given as follows:

(a) The appellant and *every* abutter *shall* be notified of the hearing by certified mail stating the time and place of the hearing, and such notice *shall* be given not less than 5 days before the date fixed for the hearing of the appeal. The board *shall* hear *all* abutters desiring to submit testimony. . . ."

(Emphasis supplied.) In order for the ZBA to have jurisdiction to consider the plaintiffs' request for a variance, it is therefore necessary that each and every abutter be given the notice prescribed by RSA 676:7. 3 E. ZIEGLER, RATHKOPF's THE LAW OF ZONING AND PLANNING § 37.05(3), at 37–65 (4th ed. 1991) (a notice provision contained in enabling act is mandatory and must be complied with to confer jurisdiction upon board of appeals). An abutter is any person owning property adjoining the land under consideration by the ZBA. RSA 672:3. In this case, notice of the 1987 variance application was never given to the parcel A abutters, as required by RSA 676:7, I(a), and the ZBA therefore did not have jurisdiction to consider the request for the variance.

■ Because the ZBA lacked jurisdiction, the variance which was granted in 1987 was invalid and of no effect; it conferred no rights upon plaintiff Hussey, as it was void from the very date on which it was issued. *See* 4 R. ANDERSON, AMERICAN LAW OF ZONING 3d § 22.17, at 43–47 (1986) (where notice to certain landowners is required by law, failure to give timely notice to such owners invalidates action of board); *State ex rel. Russel Center v. City of Missoula*, 166 Mont. 385, 391, 533 P.2d 1087, 1090 (1975) (building permit issued in violation of municipal ordinance or other statute is void *ab initio* and creates no legal rights); *Eastlake Com. Council v. Roanoke Assoc., Inc.*, 82 Wash. 2d 475, 483, 513 P.2d 36, 42 (1973) (a building permit found to be invalid is void and confers no rights). This finding does not, however, put an end to our analysis.

■ We have adopted a rule that a landowner who reasonably relies, in good faith, upon the absence of any regulation that would prohibit a proposed project acquires a vested right to complete the project where the owner (1) has engaged in substantial construction on the property, or (2) has incurred substantial liabilities directly related to his good faith reliance. *Chasse v. Town of Candia*, 132 N.H. 574, 579, 567 A.2d 999, 1002 (1989); *see also Piper v. Meredith*, 110 N.H. 291, 299, 266 A.2d 103, 109 (1970). "Absence of regulation" occurs when a regulation is waived. Nevertheless, landowners who decide to proceed with their projects heedless of serious questions about the legality of their actions may be deemed to have taken a "calculated risk," rather than to have relied in good faith. *See Piper, supra* at 300, 266 A.2d at 109; *Bosse v. Portsmouth*, 107 N.H. 523, 532, 226 A.2d 99, 107 (1967); *see also Richardson v. Town of Salisbury*, 123 N.H. 93, 97, 455 A.2d 1059, 1062 (1983). The good faith reliance, indispensable to a claim of vested right, cannot stem from

reliance on an improperly issued variance, where the recipient knew of notice problems. *See Dumais v. Somersworth*, 101 N.H. 111, 115, 134 A.2d 700, 702 (1957); *accord Eastlake Com. Council v. Roanoke Assoc., Inc., supra* at 483–84, 513 P.2d at 43. Such reliance is neither reasonable, *see Richardson v. Town of Salisbury supra; Henry and Murphy, Inc. v. Town of Allenstown*, 120 N.H. 910, 913, 424 A.2d 1132, 1134 (1980), nor in good faith, *see Piper, supra* at 299, 266 A.2d at 109.

A review of the record indicates that the plaintiffs were aware as early as the time of the 1987 hearing that not all of the abutters to parcel A had received notice of the hearing. The abutters to parcel A who were not sent notice eventually filed, on October 31, 1988, along with other concerned citizens, a petition to reopen, reconsider and vacate the ZBA's decision. Yet, approximately two months later, in late December 1988, plaintiff Hussey contacted plaintiff U.S. Aggregates to haul gravel from the area. On December 15, 1988, U.S. Aggregates contacted other parties to accomplish the actual hauling of the gravel. Thereafter, on January 18, 1989, the ZBA voted that Hussey should reapply for a variance or stop hauling the gravel from the area; Hussey did neither, and the town ultimately obtained a temporary injunction. It is apparent that the plaintiffs decided to proceed with their hauling operation despite their personal knowledge that not all of the abutters had been sent proper notice.

The plaintiffs regard the 1989 hearing as a rehearing and claim some preclusive effect of the granted variance to bar a decision inconsistent with the findings at the 1987 hearing. They claim an identity of board members in both hearings, and a substantial identity of evidence, and argue that the ZBA's decision must therefore be the same. Since the 1987 hearing was conducted without jurisdiction, however, we conclude that the 1989 hearing was a new hearing calling for a fresh decision. Therefore, the question before us is whether the ZBA's decision to deny the second application for a variance was reasonable. It is well settled that to obtain a variance the plaintiffs must demonstrate that:

> "(1) denying the variance would impose on them an unnecessary hardship; (2) surrounding properties would not suffer a diminution in value; (3) the proposed use would not be contrary to the spirit of the ordinance; (4) allowing the variance would be in the public interest; and (5) granting the variance would accomplish substantial justice."

*Goslin v. Town of Farmington*, 132 N.H. 48, 51, 561 A.2d 507, 508 (1989) (citing *Rowe v. Town of North Hampton*, 131 N.H. 424, 427,

553 A.2d 1331, 1333 (1989)) (further citation omitted). In this case, the ZBA found, and the trial court agreed, that granting the request for a variance would not be in the best interest of the public, and would diminish the value of surrounding properties. On the evidence presented for our review in this appeal, we hold that the trial court did not err in upholding the ZBA's 1989 decision. The quantity and reliability of the information presented to the ZBA in 1989, as well as its import, differed markedly from that presented during the brief 1987 hearing. In 1987, the ZBA had before it only the personal statement of plaintiff Hussey that his operations would not adversely affect the property values in the neighborhood; in 1989, the ZBA heard detailed appraisal data indicating the negative effect that such a large, long-term excavation operation would have on adjoining property values. Evidence presented at the 1989 hearing included the first analysis of the heavy truck traffic associated with the gravel pit. There was testimony in 1989 calling into question the feasibility of Hussey's proposed reforestation. The town conservation and forestry authorities indicated in 1989 that they had thoroughly disavowed their 1987 support for the proposal.

As the plaintiffs did not acquire vested rights from the 1987 ZBA decision, and the superior court did not err in upholding the denial of the 1989 request for a variance, we affirm.

*Affirmed.*

All concurred.