**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case Nos. 2017-0053, <u>Huckleberry Propane & Oil, LLC &
a. v. Town of Wilmot</u>, and 2017-0241, <u>Janellen M. Kirk & a. v.
Town of Wilmot</u>, the court on May 18, 2018, issued the
following order:**

Having considered the briefs and oral arguments of the parties, the court
concludes that a formal written opinion is unnecessary in this case. In these
consolidated cases, certain residents of Wilmot (the residents) appeal decisions
of the Superior Court (<u>McNamara</u>, J.) related to the proposed construction by
Huckleberry Propane & Oil, LLC and Huckleberry Wilmot Holdings, LLC
(collectively, Huckleberry) of an oil and propane storage and distribution facility
(the proposed storage and distribution facility). We affirm.

Huckleberry owns a lot in Wilmot (Lot 1) and has an easement over a
neighboring property (Lot 2). Both lots were created by a subdivision plan and,
according to that plan, were to be accessed by the same driveway. The
driveway runs along the "panhandle" of Lot 2 and connects to Route 11. Both
lots are located in the commercial district. Lot 2 contains a self-storage facility,
which is a permitted use in the commercial district.

In 2014, Huckleberry obtained a variance to build the proposed storage
and distribution facility on Lot 1. The trial court ruled that Huckleberry did
not need a separate variance before it could use the driveway on Lot 2 to access
that facility. The trial court reasoned that, although the ordinance does not
explicitly list driveways as permitted uses, the driveway at issue is permissible
without a variance as an accessory to a permitted use. The trial court rejected
the residents' assertion that, because the driveway will be used to access Lot 1,
it is subject to the same zoning requirements that apply to the heavy industry
use on Lot 1.

On appeal, the residents do not challenge the trial court's determination
that the driveway is an accessory use to the permitted use on Lot 2. However,
they argue that, nonetheless, the driveway requires a variance because it is
also being used to access Lot 1.

They first assert that the driveway itself constitutes a "heavy industry"
use, within the meaning of the Wilmot Planning and Zoning Ordinance (the
ordinance). Resolving this issue requires that we interpret the ordinance. We
review the trial court's interpretation of a zoning ordinance <u>de novo</u>.

<u>Dartmouth Corp. of Alpha Delta v. Town of Hanover</u>, 169 N.H. 743, 754 (2017). "Because the traditional rules of statutory construction generally govern our review, the words and phrases of an ordinance should be construed according to the common and approved usage of the language." <u>Id</u>. (quotation omitted). "When the language of an ordinance is plain and unambiguous, we need not look beyond the ordinance itself for further indications of legislative intent." <u>Id</u>. (quotation omitted).

The ordinance is a permissive zoning ordinance, which means that it is intended to preclude any use except those that are expressly permitted or that are incidental to uses so permitted. <u>Town of Carroll v. Rines</u>, 164 N.H. 523, 526 (2013). The ordinance defines heavy industry use as:

> A use engaged in the basic processing and manufacturing of materials or products predominantly from extracted or raw materials, or a use engaged in storage of or manufacturing processes using flammable or explosive materials, or storage of manufacturing processes that potentially involve hazardous or commonly recognized offensive conditions.

Heavy industry use is not a permitted use in the commercial district.

The residents reason that, because the driveway will be used to access Lot 1, it is therefore "engaged in" the same activities as the proposed storage and distribution facility and, therefore, like that facility, requires a variance. We disagree with the residents that the use of the phrase "engaged in" applies to the driveway.

Here, as the trial court determined, although the proposed storage and distribution facility "will actually be storing flammable or explosive materials," and, thus, meets the definition of a heavy industry use, "there are no facts to indicate that the driveway on Lot 2 will be used to store" such materials. Nor are there any facts indicating that the driveway will be used to process or manufacture materials. Accordingly, as the trial court concluded, the driveway is not a heavy industry use within the meaning of the ordinance.

The residents argue, in the alternative, that, even if the driveway is not itself a heavy industry use, it "take[s] on the characteristics" of the proposed storage and distribution facility on Lot 1 because it is being used to access that lot. To support this argument, the residents rely upon several cases from other jurisdictions involving driveways that cross from one zoning district into another. <u>See, e.g.</u>, <u>Atria, Inc. v. Board of Adjustment of Mt. Lebanon Tp.</u>, 264 A.2d 609, 610, 613 (Pa. 1970) (holding that the appellees did not have the right to use a driveway located in a residential zoning district to access a combination grocery store, beer parlor, and restaurant located in a neighborhood shopping zoning district); <u>Beale v. Planning Bd. of Rockland</u>, 671

N.E.2d 1233, 1236 (Mass. 1996) (stating that the "[u]se of land in one zoning district for an access road to another zoning district is prohibited where the road would provide access to uses that would themselves be barred if they had been located in the first zoning district" (emphases added)).

Those cases are inapposite because the driveway at issue in this case is within the same zoning district. As the trial court aptly determined, the cases upon which the residents rely "primarily focus on driveways for various businesses crossing residential zones." By contrast, as the trial court observed, "both lots at issue here are in a commercial zone, and the driveway does not cross a residential zone." We decline the residents' invitation to extend the reasoning from the cases in other jurisdictions upon which they rely to the facts of this case.

The residents also mistakenly rely upon Hussey v. Town of Barrington, 135 N.H. 227 (1992). In that case, the property owners had obtained a variance in 1987, but, because abutters had not been notified, were required by the town to reapply for a variance. Hussey, 135 N.H. at 229-30. Upon the property owners' reapplication, the town denied the variance on the basis of new evidence. Id. at 230. In Hussey, we were not asked to decide whether the town had correctly required the property owners to reapply for a variance. Rather, the only two issues for our review were whether: (1) the property owners had vested rights under the earlier granted variance, which could not be annulled by the town's later action; and (2) whether the town's later decision was unreasonable because the town reached a different decision than its earlier decision. Id. Neither of those issues is relevant to the instant case. Yet, the residents argue that the case stands for the "proposition that when use of one lot is necessary for the use of a second lot to operate an enterprise subject to a variance, then both lots must be subjected to variance review – particularly when improvements must be made to the first lot to support the enterprise." The case does not stand for that proposition.

We have reviewed the residents' remaining arguments and conclude that further discussion and analysis will not alter our decision. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

LYNN, C.J., and HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred.

**Eileen Fox,**
**Clerk**

3