Cheshire
No. 79-290

CHRISTA H. PRICE *& a.*

v.

THE PLANNING BOARD
CITY OF KEENE

June 25, 1980

*R. J. Shortlidge, Jr.*, of Keene, by brief and orally, for the plaintiffs.

*Charles H. Morang*, Keene City Attorney, by brief and orally, for the defendant.

*Bell, Falk & Norton*, of Keene (*Arnold R. Falk* orally), for the intervenors Douglas E. Osgood and Albert J. Ricci.

GRIMES, C.J. The principal issue before us in this case is whether the superior court erred in dismissing the plaintiffs' petition for certiorari. We affirm.

On June 28, 1979, the plaintiffs filed a petition for certiorari under RSA 36:34 (Supp. 1979) with the Cheshire County Superior Court, seeking review of a decision of the Keene Planning Board (hereinafter the board), granting approval of the Acorn Ridge Subdivision. In response to their petition, the clerk of court issued an order of notice to the board directing it to review its decision approving the subdivision and to make return to the court on or before July 20. The board did not review its decision but instead forwarded sworn or certified copies of all the letters, documents and plans relating to the subdivision, together with the minutes of its proceedings thereon, to the court. Thereafter, the owners of the subdivision, Douglas E. Osgood and Albert J. Ricci, moved successfully to intervene in the matter. The intervenors, together with the board, moved to dismiss the petition for certiorari.

A hearing was had on these motions and on the petition on August 9, 1979, at which all parties were represented by counsel. By findings and decree dated August 17, 1979, the Court (*Contas*, J.) found that the "plaintiffs failed to show, in any way, that the Planning Board's decision was illegal, unjust or unreasonable. . . ."

Accordingly, the petition was dismissed and the plaintiffs appealed.

A review of the record below, as well as the arguments of counsel in this case, persuades us that there currently is confusion surrounding the procedural aspects of certiorari proceedings in the superior court under RSA 36:34 (Supp. 1979). In the interests of clarification, therefore, our analysis of the proper procedure under this statute will be set out in some detail.

## I. *Standing*

Although it prevailed below, the board here argues that, as a threshold matter, certiorari should have been denied the plaintiffs because they are not "persons aggrieved by a decision of the planning board. . . ." RSA 36:34 I (Supp. 1979). Although acknowledging that our decision last term in *Weeks Restaurant Corp. v. City of Dover*, 119 N.H. 541, 404 A.2d 294 (1979) expanded the class of persons possessing standing to appeal planning board actions, the board nevertheless argues that these plaintiffs' interest is too remote under even the new standard. We disagree.

■ ■ We recognize that neither plaintiff owns property abutting the challenged subdivision. Our holding in *Weeks*, however, clearly abolished the earlier rule that RSA 36:34 (Supp. 1979) standing was limited to abutters. Although questioned at the hearing, it appears to be conceded that the plaintiff Turetsky owns real estate situated across a public highway from the proposed subdivision. The plaintiff Price, whose property is located at an undisclosed distance from the subdivision, owns a right of way across it. It is conceded that the approved plan interferes with the location of the right of way currently utilized by the plaintiff Price. Both plaintiffs allege that the increased traffic and noise resulting from the proposed subdivision will reduce their enjoyment of their respective properties. The change in use proposed by the intervenors, namely single-family dwellings as opposed to undeveloped open space, is significant. Finally, it appears that the plaintiffs participated in the hearings before the planning board, though the degree of participation was disputed and unclear. We think that on the basis of plaintiffs' allegations, they have "demonstrated the concrete adverseness that is essential to proper judicial resolution of the issues." *Weeks Restaurant Corp. v. City of Dover, supra* at 545, 404 A.2d at 296. Accordingly, they have standing to seek certiorari under RSA 36:34 (Supp. 1979). We note that although portions of the superior court's findings seem to indicate a contrary resolution of this issue, it

nevertheless proceeded to the merits of the plaintiffs' petition. Whatever error was involved in its determination of this issue was therefore rendered harmless.

II. *The Certiorari Order*

In the instant case, upon receipt of the plaintiffs' petition for certiorari, the Cheshire County Clerk of Court issued an order of notice to the board directing it to review its decision regarding the challenged subdivision and to forward to the court a copy of its entire record. The board and intervenors challenge this procedure on two grounds. First, they construe the language of RSA 36:34 II (Supp. 1979) as requiring that a justice and not the clerk of the superior court review the petition to determine whether a certiorari order should issue. Second, they argue that the court erred in construing the statutory language as authorizing an order directing the board to reconsider its decision. We find both of these arguments to be well taken.

■■ Insofar as it now concerns us, RSA 36:34 II (Supp. 1979) provides:

"Upon presentation of such petition the court may allow certiorari order directed to the planning board to review such decision and shall prescribe therein the time within which return thereto shall be made and served upon the petitioner's attorney, which shall not be less than ten days and may be extended by the court."

We think that the words "the court may allow certiorari" indicate a legislative intent that a justice of the court review the petition to determine whether such an order should issue. *See State v. Bishop*, 3 N.H. 312 (1825). In essence, a certiorari order directs the planning board to forward its record to the superior court. RSA 36:34 II (Supp. 1979); 14 AM. JUR. 2d *Certiorari* § 2 (1964). It would be anomalous to require the furnishing of the administrative record in advance of a judicial determination that the board's decision warranted review. We think it appropriate that the trial court determine from the petition, together with any other pleadings, whether a certiorari order should issue. *See State v. Salvucci Inc.*, 110 N.H. 502, 272 A.2d 854 (1970); 14 AM. JUR. 2d *Certiorari* § 38 (1964).

■■ We think that the order of notice directing the board to reconsider its opinion regarding the intervenors' subdivision was also erroneous. Although the chosen language is less than precise,

RSA 36:34 II (Supp. 1979) does not provide the superior court with authority to order what amounts to a rehearing. *See, e.g.,* RSA 541:3. Rather, the review mentioned in that section is to be performed by the superior court subsequent to its decision that a certiorari order should issue. The certiorari order is to allow the court to review the decisions of the board. Because the board declined to review or reconsider its opinion, this procedural error also was harmless.

### III. *The Hearing*

The plaintiffs challenge the efficacy of the proceedings below on a more fundamental ground. They contend that RSA 36:34 III (Supp. 1979) provides them a right to a full hearing before the superior court on the merits of their petition and that, as a necessary corollary, they were entitled to present evidence to the court upon the merits of their claim. The court's refusal to hear any evidence other than that contained in the board's record constitutes, in their view, reversible error. We do not agree.

In regard to hearings on petitions for certiorari, RSA 36:34 III (Supp. 1979) provides:

> "If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence as it may direct . . . which shall constitute a part of the proceedings upon which the determination of the court shall be made."

We note that in certiorari proceedings generally, review is ordinarily confined to the record of the lower tribunal. *Hagerty v. Shedd,* 75 N.H. 393, 74 A. 1055 (1909); 14 AM. JUR. 2d *Certiorari* § 66 (1964). *But see Broderick v. Hunt,* 77 N.H. 139, 89 A. 302 (1913). The practical effect of RSA 36:34 III (Supp. 1979) is to broaden the scope of review by way of certiorari by granting to the superior court discretion to receive and to consider additional evidence when "it shall appear . . . necessary." *See Patenaude v. Town of Meredith,* 118 N.H. 616, 392 A.2d 582 (1978). We cannot say that the court's decision in this case not to allow the plaintiffs a full evidentiary hearing constituted an abuse of discretion. The trial justice had before him the record of the proceeding before the board as well as the arguments of counsel. Given the nature of the issues involved, the court could well conclude that receiving further evidence would not advance justice or judicial economy.

*See Chiplin Enterprises, Inc. v. City of Lebanon,* 120 N.H. 124, 411 A.2d 1130 (1980).

IV. *The Merits*

The plaintiffs lastly dispute the authority of the board to approve the contested subdivision. They argue that although located in a zone requiring a minimum five-acre lot size, the subdivision lots average a mere 2.72 acres. They acknowledge that the subdivision was approved under regulations of the board relating to planned unit developments. They contend, however, that inasmuch as the subdivision lacks the dedicated open spaces or public amenities required by the regulation, it fails to qualify as a planned unit development and is therefore unlawful. We disagree.

Born out of the inadequacy of traditional zoning techniques, the concept of planned unit development

"is an instrument of land use control which augments and supplements existing master plans and zoning ordinances, and permits a mixture of land uses on the same tract. . . . It also enables municipalities to negotiate with developers concerning proposed uses, bulk, density and set-back zoning provisions, which may be contrary to existing ordinances if the planned project is determined to be in the public and individual homeowner's interest. It also recognizes the importance of encouraging and making it financially worthwhile for developers and investors to undertake P.U.D. projects by permitting a more intensified utilization of vacant land which is scarce and skyrocketing in price."

1 A. RATHKOPF, THE LAW OF ZONING AND PLANNING § 1.02 at 1-16 (4th ed. 1979), *quoting Rudderow v. Township Committee of Township of Mt. Laurel,* 121 N.J. Super. 409, 413 297 A.2d 583, 585 (1972). Although not acknowledged by the plaintiffs, the Keene zoning ordinance specifically provides for planned unit development. Section 4 of the ordinance provides that such developments "shall be administered as a subdivision . . ." after "Advice and Consideration by the Planning Board. . . ." Section 86 defines a planned unit development as "a type of land development which allows for variety, flexibility and creativity of subdivision design." Moreover, the only requirement imposed by the ordinance on the contested development is that it not exceed a density of 1.25 dwellings per acre. *See* Keene Zoning Ordinance Table # 3. Where,

as here, the average lot size exceeds 2.7 acres, the zoning ordinance is clearly met.

Similarly, the plaintiffs claim that the absence of dedicated open space or other public amenities deprives the subdivision of planned unit development status. No requirement of the board's regulations or the Keene Zoning Ordinance mandates that such features be included in a planned unit development. The fact that the board's regulations provide for the disposition of any resulting open spaces, section 4, Keene Planning Board Regulations, does not support the plaintiffs' theory that open space or other amenities, although sometimes required, are a prerequisite to planned unit development status. This is particularly so in light of the declared regulatory purpose which is, in part, to assure "that the growing demands for housing may be met by greater variety in type, design and layout of dwellings . . . [and] *to encourage a more efficient use of land and public services. . . ." Id.*, section 1 (emphasis added).

The plaintiffs' argument that the contested subdivision improperly allows for an "intensive use" of the land in question is not persuasive. We do not agree that any subdivision composed of twenty-four single dwelling sites averaging 2.72 acres can be considered an intensive development. Rather, the superior court was entitled to find that the plaintiffs failed to meet their statutory burden of demonstrating, by a balance of the probabilities, the illegality or unreasonableness of the board's decision. RSA 36:34 (Supp. 1979).

*Affirmed.*

All concurred.