Carroll
Nos. 98-072
 98-164

MOUNTAIN VALLEY MALL ASSOCIATES

v.

MUNICIPALITY OF CONWAY & a.

February 3, 2000

*Wiggin & Nourie, P.A.*, of Manchester (*W. Wright Danenbarger* on the brief and orally), for the plaintiff.

*Hastings Law Office, P.A.*, of Fryeburg, Maine (*Peter G. Hastings* and *Peter J. Malia, Jr.* on the brief, and *Mr. Malia* orally), for the Municipality of Conway, the Conway Planning Board, and the Conway Zoning Board of Adjustment.

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*Robert E. Murphy, Jr.* on the brief and orally), for the intervenor, the Druker Company, Ltd.

JOHNSON, J. In this consolidated appeal, the plaintiff, Mountain Valley Mall Associates, appeals the decision of the Superior Court (*O'Neill*, J.) affirming the decision of the Conway Planning Board (board) approving intervenor Druker Company, Ltd.'s concurrent applications for site plan approval and subdivision of a 14.92 acre parcel in North Conway (direct appeal). The plaintiff also appeals the decision of the Superior Court (*Mohl*, J.) dismissing its petition for review of a decision of the Conway Zoning Board of Adjustment (ZBA) (ZBA appeal). We affirm.

This case presents a complex procedural and factual history involving multiple hearings before the planning board and concurrent appeals from the planning board's decision to both the ZBA, *see*

RSA 676:5, III (1996), and the superior court, *see* RSA 677:15 (1996). In October 1995, the intervenor filed concurrent applications for a site plan review and subdivision with the planning board seeking approval for a proposed 117,400 square foot retail mall in North Conway. In July 1996, the planning board granted conditional approval of the project, *see* RSA 676:4, I(c) (1996) (amended 1997, 1998), subject to ten specific conditions. The planning board granted final approval upon satisfaction of those conditions in March 1997. The plaintiff filed two appeals of the planning board decision in April 1997, one with the superior court and one with the ZBA, making almost identical claims of error on the part of the planning board. *But cf.* RSA 677:15, I (limiting issues appealable to the ZBA). After the ZBA denied the plaintiff's administrative appeal as untimely, *see* RSA 676:5, III (outlining when planning board decisions should be appealed to the ZBA); *cf.* RSA 677:2, :3 (1996), and subsequently denied its motion for rehearing, the plaintiff appealed that decision to the superior court (ZBA appeal) in June 1997, *see* RSA 677:4 (Supp. 1997).

In November 1997, the superior court affirmed the planning board decision in the direct appeal. The court, however, refused to address claims of error regarding the ZBA's grant of a series of special exceptions in April 1996, noting that the direct appeal was made pursuant to RSA 677:15, not RSA 677:4, and thus, "[r]eview of zoning board determinations would be beyond the scope of this appeal." The intervenor then moved to dismiss the ZBA appeal on the basis that even if the plaintiff had timely filed its administrative appeal with the ZBA, the issues raised in the ZBA appeal were identical to those already decided in the direct appeal, and therefore collateral estoppel barred litigation of the ZBA appeal. The Municipality of Conway concurred in the intervenor's motion.

The superior court granted the intervenor's motion to dismiss on the bases: (1) that the planning board issues had been resolved in the direct appeal, and thus the plaintiff was barred by collateral estoppel from relitigating those issues; and (2) that the plaintiff failed to properly exhaust its administrative remedies with respect to the ZBA appeal. The plaintiff's appeals to this court of both the direct appeal and ZBA appeal were consolidated for our review, and we now affirm.

On appeal, the plaintiff contends that the superior court erred in: (1) concluding that the board properly approved the intervenor's application because it did not comply with regulatory and statutory requirements; (2) refusing to conclude that the board improperly granted certain waivers to the intervenor; (3) refusing to admit

additional evidence during the direct appeal; (4) refusing to entertain the plaintiff's due process challenge to the grant of the special exceptions; and (5) determining which forum had subject matter jurisdiction over the grant of special exceptions.

The superior court's review of the planning board in both the direct appeal and the ZBA appeal is governed by statute. "Upon a grant of certiorari [pursuant to RSA 677:15], the superior court may review the decision of a planning board, and may reverse, affirm, or modify that decision where there is an error of law or when the decision is unreasonable." *Deer Leap Assocs. v. Town of Windham*, 136 N.H. 555, 557, 618 A.2d 837, 838 (1992) (citation omitted). The party appealing a ZBA decision likewise must demonstrate that it was unlawful or unreasonable. *Narbonne v. Town of Rye*, 130 N.H. 70, 72, 534 A.2d 388, 389 (1987). Although RSA 677:6 (1996) provides that "[a]ll findings of the zoning board of adjustment or the local legislative body upon all questions of fact properly before the court shall be prima facie lawful and reasonable," it is settled law that

> [t]he statute does not impose an absolute requirement that the board's decision be erroneous as a matter of law before a trial judge can change it; the court need only inquire whether there is such error when it is not persuaded by the balance of the probabilities, on the evidence before it, that said order or decision is unjust or unreasonable.

*Cook v. Town of Sanbornton*, 118 N.H. 668, 670, 392 A.2d 1201, 1202 (1978) (quotation omitted) (decided under prior law).

As a preliminary matter, the parties dispute the standard of review governing the appeals to this court. The plaintiff asserts that because the superior court decided both appeals based solely on the record before the ZBA and board, we should independently review the record to determine whether the planning board or ZBA erred. We disagree.

In land use cases, we have not reviewed the determination of the superior court *de novo* regardless of whether the appellate record consists only of the certified record of the local planning board or ZBA. *See Ray's Stateline Market v. Town of Pelham*, 140 N.H. 139, 142-43, 665 A.2d 1068, 1070-71 (1995) (applying deferential standard where trial court accepted facts as presented to the ZBA); *Rowe v. Town of North Hampton*, 131 N.H. 424, 428, 553 A.2d 1331, 1334 (1989) (deference paid to superior court where it admitted additional evidence); *Narbonne*, 130 N.H. at 72-73, 534 A.2d at 389 (plaintiffs offered only record of administrative hearings at the superior court). The cases cited by the plaintiff as dictating a *de*

*novo* standard of review do not involve appeals from zoning decisions, *see McGovern v. Secretary of State*, 138 N.H. 128, 129, 635 A.2d 498, 499 (1993) (broadening standard of review when deciding constitutional question on *stipulated* record); *Masse v. Commercial Union Ins. Co.*, 136 N.H. 628, 632, 620 A.2d 1041, 1044 (1993) (refusing to grant usual deference to superior court in insurance policy coverage dispute), and are not governed by either the statutory framework at issue here or prior relevant case law. "The standard of review for this court is not whether we would find as the trial court did but whether the evidence reasonably supports the finding." *Durant v. Town of Dunbarton*, 121 N.H. 352, 357, 430 A.2d 140, 144 (1981); *see, e.g., Grey Rocks Land Trust v. Town of Hebron*, 136 N.H. 239, 248-49, 614 A.2d 1048, 1053 (1992) (Horton, J. dissenting) (noting that "[o]ur role on review is also limited, requiring deference to the trial court's findings" even where the evidence was "essentially limited to the record before the zoning board of adjustment").

■ Therefore, when reviewing the superior court's disposition of both appeals, "we will uphold the trial court unless its decision is not supported by the evidence or is legally erroneous." *Nadeau v. Town of New Durham*, 129 N.H. 663, 666, 531 A.2d 335, 337 (1987) (upholding trial court's reversal of both planning board and ZBA); *see Ray's Stateline Market*, 140 N.H. at 143, 665 A.2d at 1070-71 (superior court review of ZBA appeal); *Deer Leap Assocs.*, 136 N.H. at 557, 618 A.2d at 838 (superior court review of planning board under 677:15). "We look to whether a reasonable person could have reached the same decision as the trial court based on the evidence before it." *Nadeau*, 129 N.H. at 666, 531 A.2d at 337 (quotation omitted).

*I. Compliance Determination*

The plaintiff first asserts that the superior court erred in granting final approval to the project because the evidence presented below demonstrates that it does not comply with several Conway site plan review regulations. *See generally* TOWN OF CONWAY SITE PLAN REVIEW REGULATIONS (1995) (town regulations). The plaintiff lists a number of specific violations, and we address each in turn.

The plaintiff first contends that the intervenor's site plan violates the town regulations governing minimum parking spaces. *See id.* § 123-22(A)(1). The town regulations provide for a minimum number of parking spaces per site, based on the particular use and size of the project. Although the project meets the parking space

requirements, the plaintiff contends that the project does not comply with this regulation because after January 10th of each year, some spaces may be used to store snow. The superior court rejected this argument, ruling that because the board restricted use of the parking spaces for snow storage until after the busy holiday shopping season, and "[t]he Site Plan Review Regulations do not prohibit temporary depletion of parking to accommodate plowed snow," the board acted reasonably. We conclude that the superior court's decision was not erroneous as a matter of law and was supported by the evidence.

■■ Because the interpretation of a zoning ordinance involves a question of law, we review the superior court's determination *de novo. See, e.g., Healey v. Town of New Durham*, 140 N.H. 232, 236, 665 A.2d 360, 365 (1995). "In general, the traditional rules of statutory construction will govern . . . ." *Tausanovitch v. Town of Lyme*, 143 N.H. 144, 147, 722 A.2d 914, 916 (1998) (quotation omitted). As such, we look to the plain meaning of the words used in the regulations, *cf. Healey*, 140 N.H. at 236, 665 A.2d at 365, and will not add words that the town did not see fit to include, *cf. Olson v. Town of Fitzwilliam*, 142 N.H. 339, 344, 702 A.2d 318, 321 (1997). Here, the town regulations do not prohibit the temporary allocation of parking spaces for non-parking uses. Furthermore, because the board allowed the plaintiff to reduce parking availability only *after* an expected seasonal increase in retail shopping traffic, the superior court properly concluded that the board acted reasonably. *Cf. Ray's Stateline Market*, 140 N.H. at 144-45, 665 A.2d at 1072 (upholding superior court's decision as legally correct and factually supported).

The plaintiff next contends that the superior court erred in concluding that the handicap spaces in the site plan were sufficiently wide. The regulations require that "[h]andicap parking spaces shall be 11 feet wide by 18 feet long and must adjoin a five foot access aisle, which may be shared by adjoining handicap parking spaces." TOWN OF CONWAY SITE PLAN REVIEW REGULATIONS § 123-23(C). The superior court noted that the handicap parking spaces in the site plan do not strictly conform to the regulation. Rather, space size conforms with standards set forth in the Americans with Disabilities Act (ADA); namely, handicap spaces be at least eight feet wide with a shared aisle of eight feet. *See* 36 C.F.R. § 1191.1; pt. 1191, app. A § 4.6.3; pt. 1191, app. A § 4.1.2(5)(b) (1999). The superior court concluded, however, that the board acted reasonably because

[t]wo spaces and a shared access aisle span twenty-seven feet under [the intervenor's] site plan or the Conway regulation. . . . [Therefore, the intervenor's] plan does not compromise overall width requirements; . . . . [and] [i]n light of the above, the Board, in its discretion, could reasonably consider the ADA standard as a suitable substitute for the requirements [of] regulation 123-23(C).

■ Although the regulations allow for substitution of alternative designs, they "require a formal motion of the Board, and the minutes of the meeting should indicate the Board's reasoning for future reference." TOWN OF CONWAY SITE PLAN REVIEW REGULATIONS § 123-41(B). The plaintiff argues that the board failed to follow these procedural mandates, and thus the project is not properly in compliance with the handicap parking regulations. We conclude that the superior court properly rejected the plaintiff's argument. "Minor deviations from the statutory procedure or technical violations thereof may be excused if there is substantial compliance." *Bourgeois v. Town of Bedford*, 120 N.H. 145, 148, 412 A.2d 1021, 1023 (1980) (quotation omitted). "We have consistently refused to require strict adherence to statutory requirements in the land-use context where to do so would frustrate the legislative purpose and deny landowners the protection afforded them by statute." *Treisman v. Town of Bedford*, 132 N.H. 54, 63, 563 A.2d 786, 792 (1989) (quotation omitted). Here, use of the ADA standard as opposed to the town standard does not frustrate the purpose of handicap parking of providing equal access to retail facilities to individuals with certain disabilities. *Cf.* 42 U.S.C.A. §§ 12101, 12182 (1995). This is especially true in this instance where the plaintiff has failed to demonstrate how use of the ADA standard would in any way prejudice those who use handicap parking spaces. *Cf. Treisman*, 132 N.H. at 64, 563 A.2d at 792 (refusing to invalidate ordinance where plaintiff did not allege he was prejudiced by failure to strictly comply with statute).

■ The plaintiff next contends that the site plan does not comply with the town regulations governing the accommodations for the off-street loading of goods. Regulation 123-24 requires in pertinent part that "[a]ll non-residential sites shall provide off-street loading facilities, . . . [and] shall be located and designed to minimize traffic flow disruptions . . . and so that delivery vehicles can be parked completely out of the right-of-way." TOWN OF CONWAY SITE PLAN REVIEW REGULATIONS § 123-24. The plaintiff argues that the site plan does not include loading docks and does not provide for a free

flow of traffic around the designated loading areas. We conclude that based on the record before it, the superior court could have reasonably concluded that the plan was in compliance. *See Nadeau*, 129 N.H. at 666, 531 A.2d at 337. Evidence before the planning board included a letter from an engineering firm that the "usual industry tractor-trailer and hook-and-ladder trucks" would have ample room to maneuver around the facility and discharge their loads. Further, because the regulations do not require formal loading docks, it would be inappropriate for this court to conclude that they are obligatory. *Cf. Olson*, 142 N.H. at 344, 702 A.2d at 321.

The plaintiff next contends that the superior court erred in concluding that the site plan provides for ample pedestrian and wheelchair access. The town's regulations require "safe pedestrian access," including pedestrian aisles in the parking lot, TOWN OF CONWAY SITE PLAN REVIEW REGULATIONS § 123-26, and that wheelchair access to the facility be provided through the use of ramps, *id.* § 123-36. The superior court correctly noted that the site plan provided for a number of crosswalks and sidewalks as well as specifications for wheelchair ramps, and we will not overturn its conclusion that the plan substantially complies with the town's pedestrian access regulations. *See Treisman*, 132 N.H. at 63, 563 A.2d at 792. Although the plaintiff faults the intervenor for not providing lined pedestrian aisles in the parking lot, we note that there is no such requirement in the regulations.

■ With respect to wheelchair access, the plaintiff asserts that the superior court acted unreasonably in finding compliance because the site plan did not include wheelchair ramps. The superior court relied, however, on an addendum specifically referenced in the adopted site plan that provides for wheelchair ramps. *Cf. Estabrooks v. Town of Jefferson*, 134 N.H. 367, 369, 592 A.2d 1154, 1156 (1991) (court shall consider all evidence transferred from local legislative body). Because we cannot conclude that the superior court improperly relied on this evidence to find that there is sufficient wheelchair access, this argument must also fail. *Cf. Peter Christian's v. Town of Hanover*, 132 N.H. 677, 684, 569 A.2d 758, 764 (1990) (upholding decision of trial court where decision "does not include any finding of fact or ruling of law which could not have been derived from the certified record").

■ The plaintiff next contends that the intervenor's provision for snow storage is inadequate. The regulations provide that the site plan should indicate locations for snow storage on the site and that "[i]n no case shall snow be stored on a landscaped area in which the

snow pile could destroy the landscaping." TOWN OF CONWAY SITE
PLAN REVIEW REGULATIONS § 123-25. The superior court con-
cluded that "[t]he Board could have reasonably found, however, that
temporary snow storage would be accomplished in a manner
consistent with the protection of trees." The plaintiff contends that
the superior court erred because the site plan provides for a snow
storage area in an undeveloped section of land, where new trees may
be planted, and as such "the *possibility* that the new plantings will
be damaged is manifest." (Emphasis added.) The plaintiff bears the
burden of showing that the planning board acted unreasonably, *cf.*
*Price v. Planning Board*, 120 N.H. 481, 488, 417 A.2d 997, 1002
(1980) (decided under prior law), and here, the court properly
concluded that the plaintiff failed to satisfy this burden. First, it is
unclear from the record before us whether there will be "new
plantings" in the designated snow storage areas, as the lighting and
landscaping plans appear to indicate only that the existing trees will
remain on that portion of the property. Further, the plaintiff has
failed to demonstrate that even if new plantings are present, they
would be irreparably damaged by normal snow storage. The mere
conjecture offered by the plaintiff is simply insufficient, and as such
we are unpersuaded by its argument.

The plaintiff next contends that the site plan does not comply
with the town regulations governing traffic aisle widths and general
traffic circulation requirements. The town regulations require park-
ing lots to meet certain design requirements, including, *inter alia*,
that there be twenty-four foot aisle widths to accommodate two-way
traffic, TOWN OF CONWAY SITE PLAN REVIEW REGULATIONS
§ 123-23(A), and that "[t]he parking lot design shall be such that
there is safe and adequate traffic circulation," *id.* § 123-23(E). The
superior court concluded that "[i]t is not clear from [the interve-
nor's] site plan that the travel aisle is narrower [than] 24 feet" and
that further "[r]eview of the site plan does not suggest that trucks
will create safety problems or traffic congestion." Thus, the court
concluded that the plaintiff failed to carry its burden on appeal.
After a review of the record, we conclude that the superior court did
not act unreasonably. Although the plaintiff presented the trial
court with numerous charts interpreting the site plan, we concur
with the trial court that the plaintiff's conclusions are not apparent
from the record, and thus affirm.

The plaintiff next contends that the superior court erred in
determining that the project complies with the regulations govern-
ing "greenspace": "In all zoning districts, greenspace shall com-

prise no less than 25% of the total lot area, exclusive of wetlands, waterbodies, 100 year floodplain . . ., and slopes over 25% . . . ." *Id.* § 123-30(B). The plaintiff contends that the superior court improperly calculated the applicable denominator in the greenspace formula. The plaintiff submits that the formula requires that the greenspace numerator be divided by a denominator equaling the total lot area, and not, as the board found, a denominator equaling total lot area less wetlands, water bodies, the floodplain, and slopes over 25%. We disagree.

■ Interpretation of the words of a zoning ordinance presents a question of law which we evaluate according to well-settled principles of statutory construction. *Healey*, 140 N.H. at 236, 665 A.2d at 365. In this case, we must determine whether the limiting phrase "exclusive of wetlands, waterbodies, 100 year floodplain . . ., and slopes over 25%," in the regulation applies to "greenspace" or "total lot area." One established rule of statutory construction, the "last antecedent rule," *see United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 751 (1st Cir. 1985), "is the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Moulton v. Brookline Rent Control Bd.*, 431 N.E.2d 225, 227 (Mass. 1982) (quotation omitted). Therefore, "qualifying phrases are to be applied to the words or phrases immediately preceding and are not to be construed as extending to others more remote." *Russell v. Boston Wyman, Inc.*, 574 N.E.2d 379, 380 (Mass. 1991) (quotation omitted). This rule of statutory construction supports applying the limiting phrase "exclusive of wetlands, waterbodies, 100 year floodplain . . ., and slopes over 25%" to "total lot area." Further, this interpretation is consistent with the purpose of the town's landscaping regulations, including, *inter alia*, to "enhance site design; enhance privacy; separate, screen and shield potentially conflicting land uses . . .; reserve a portion of the lot to remain undeveloped, permeable, and vegetated; . . . and help integrate the built environment with the natural environment," TOWN OF CONWAY SITE PLAN REVIEW REGULATIONS § 123-30, because it would still require 25% of a buildable lot to be dedicated to "greenspace." Thus, the superior court's interpretation of the regulation was legally sound.

The plaintiff next contends that the board erred in not providing proper notice to the surrounding communities of the potential regional impact as required by RSA 36:57 (Supp. 1999). If the board

determines that a proposed development may affect the surrounding communities, RSA 36:57 requires that these communities, and the regional planning commission, *see* RSA 36:46 (1988 & Supp. 1999), receive notice of all public hearings regarding the development and the minutes of any meeting at which the board made a decision regarding the regional impact of the development. Contrary to the plaintiff's argument, however, the record reveals that the regional planning commission and abutting communities were issued notice of the public hearings on the project as required by RSA 36:57, III. It is unclear from the record, however, whether copies of the meetings' minutes were forwarded to the regional planning board and abutting communities. *See* RSA 36:57, II. The superior court concluded, however, that if true, the failure to mail the minutes "would be a minor procedural defect which did not impair the [plaintiff's] opportunity for notice and participation . . . [and thus] the Board substantially complied with RSA 36:57." The plaintiff contends that the trial court erred because RSA 36:57 is a mandatory notice provision and lack of compliance renders the board's acts void. *See generally Hussey v. Town of Barrington*, 135 N.H. 227, 604 A.2d 82 (1992).

We have held that a board's failure to give written notice to an abutter, as required by statute, did not warrant invalidation of the variance where the failure to notify was not prejudicial to the abutter. *Tenn, Trustee v. 889 Associates, Ltd.*, 127 N.H. 321, 330, 500 A.2d 366, 372 (1985); *see Patenaude v. Town of Meredith*, 118 N.H. 616, 621, 392 A.2d 582, 586 (1978) ("not all procedural irregularities require a reviewing court to set aside an administrative decision; material prejudice to the complaining party must be shown"); *cf.* RSA 676:4, IV (1996) (planning board's actions reversed for procedural defects only when "defects create serious impairment of opportunity for notice and participation"); *Carter v. Nashua*, 113 N.H. 407, 415, 308 A.2d 847, 853 (1973). Here, the trial court determined that even assuming that the town failed to mail *the minutes* to the abutter towns and regional planning commission, the plaintiff failed to demonstrate prejudice. Whether prejudice has resulted is a question of fact, *cf. Appeal of Brown*, 143 N.H. 112, 115, 720 A.2d 66, 69 (1998), and we will not disturb the trial court's finding if reasonably supported by the evidence. *See Nadeau*, 129 N.H. at 666, 531 A.2d at 337. Here, the town provided notice to the abutter towns of the pending public hearings on more than one occasion, and this notice specifically informed the abutter towns that it "serv[ed] as notice of the Board's decision regarding potential

regional impact, and also as notice for the first scheduled Public Hearing." *Cf. Carter*, 113 N.H. at 415, 308 A.2d at 852-53. The notice further informed the abutter towns that "[a]s an abutter, you are legally entitled to attend this hearing and offer input." Thus, the superior court could reasonably conclude that the abutter towns received the "notice prescribed by [the statute]," *Hussey*, 135 N.H. at 232, 604 A.2d at 85, even if the town failed to mail the actual minutes to the abutter towns. *Cf. Carter*, 113 N.H. at 412-13, 415, 308 A.2d at 851, 852 (failure to strictly comply with notice provision found to be of no consequence).

Finally, we have reviewed the plaintiff's remaining claims of noncompliance and find them to be without merit and warranting no further discussion. *See, e.g., Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

## II. Waivers

The plaintiff contends that the superior court erred in concluding that the board properly issued a series of waivers to the intervenor. Although the plaintiff concedes on appeal that the board was not required to make express findings, it alleges that there is insufficient evidence on the record to support a finding that the regulatory prerequisites to granting the waivers were satisfied. The intervenor asserts, however, that this issue is not preserved for appellate review because it was neither raised before the board, nor raised in the plaintiff's appeal and trial memorandum to the superior court.

The record reveals that the issue raised by the plaintiff before the superior court was the issue it now concedes; namely whether the board is required to make specific findings. The court's order, therefore, did not address sufficiency of the evidence. The plaintiff did not challenge the sufficiency of the evidence until its motion for reconsideration, and the superior court refused "to reach the merits of [the plaintiff's] new claim at this late procedural juncture."

Accordingly, we must first determine whether the superior court properly declined to address the issue raised for the first time in the plaintiff's motion for reconsideration. "We will uphold a trial court's decision on a motion for reconsideration absent an abuse of discretion." *Fortin v. Manchester Housing Auth.*, 133 N.H. 154, 160, 574 A.2d 945, 950 (1990) (quotation and citation omitted).

We conclude that the trial court acted reasonably and within its discretion. Here, the plaintiff is attempting, upon reflection, to inject a new issue for consideration before the court. *Cf. Sklar Realty v. Town of Merrimack*, 125 N.H. 321, 328, 480 A.2d 149, 153 (1984) (a party may not be entitled to judicial review of matters not

raised at the earliest possible time). It is in the interest of judicial economy to require a party to raise all possible objections at the earliest possible time, especially in this case, where: (1) the plaintiff alleged no less than thirty separate violations by the board; and (2) the error alleged in the motion for reconsideration was readily apparent at the time the plaintiff filed its RSA 677:15 appeal, *see, e.g., Bradley v. City of Manchester,* 141 N.H. 329, 333, 682 A.2d 1194, 1197 (1996) (parties not entitled to take advantage of error readily apparent at earlier stage in proceedings). Given the unique posture of this case, we conclude that the superior court properly refused to entertain the issue on reconsideration.

 The plaintiff attempts to rely on our holding in *State v. Tselios,* 134 N.H. 405, 407, 593 A.2d 243, 245 (1991), that an issue is preserved for appeal to this court even though it is raised for the first time in a motion for reconsideration. We need not reach the preservation issue, because unlike *Tselios,* where the trial court reached the merits of the claim on reconsideration, *see id.* at 406-07, 593 A.2d at 244-45, here, the trial court expressly refused to consider the merits of the claim, and we must review that decision for an abuse of discretion. Finding no abuse of discretion, we find no error.

*III. Admission of Extrinsic Evidence*

 The plaintiff next asserts that the superior court erred in refusing to admit extrinsic evidence during the superior court proceedings in the direct appeal. The plaintiff also asserts that once it had standing to appeal to the superior court, it was entitled to a full hearing.

RSA 677:15, III provides:

> If, upon the hearing, it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence as it may direct and report the same to the court with the referee's findings of fact and conclusion of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made.

This provision entitles the court, *at its discretion,* "to consider additional evidence when it shall appear necessary." *Price,* 120 N.H. at 486, 417 A.2d at 1001 (quotation and ellipses omitted) (decided under prior law). The legislature's use of the phrase "may take evidence" plainly indicates that the plaintiff is not *entitled* to a full

evidentiary hearing, *cf. Cheever v. Southern N.H. Regional Med. Ctr.*, 141 N.H. 589, 591, 688 A.2d 565, 566-67 (1997) (this court looks first to the plain meaning of a statute); rather, it is the court's prerogative to determine whether admission of further evidence would "advance justice or judicial economy," *Price*, 120 N.H. at 486, 417 A.2d at 1001. In this case, the superior court had before it an extensive certified record, and had the benefit of exhaustive pleadings and arguments of counsel. *See id.* The trial court is in the best position to determine the sufficiency of the record before it, and based on the record in this case, we cannot conclude that the superior court abused its discretion. *Cf. Peter Christian's*, 132 N.H. at 683, 569 A.2d at 763.

We have reviewed the plaintiff's remaining arguments regarding the trial court's refusal to grant an evidentiary hearing and find them to be without merit and warranting no further consideration. *See, e.g., Vogel*, 137 N.H. at 322, 627 A.2d at 596.

## IV. ZBA Grant of Special Exceptions

The plaintiff contends that the superior court erred in dismissing its ZBA appeal contesting the ZBA's grant of two special exceptions. The superior court dismissed the ZBA appeal, finding that it "was not preserved through proper exhaustion of administrative remedies," because the plaintiff failed to file a motion for rehearing with the ZBA pursuant to RSA 677:2 (1996) after it discovered that the ZBA had granted the special exceptions. *See* RSA 677:3, I (1996) (no appeal allowed if party fails to file a motion for rehearing). We affirm.

The intervenor applied for two special exceptions to the town's zoning regulations in March 1996. The ZBA granted those exceptions on April 3, 1996, but failed to file the notice of decision until February 1997. The plaintiff attempted to challenge the ZBA's grant of those special exceptions in April 1997 in its two appeals from the planning board's final approval of the intervenor's site plan application. *See* RSA 676:5, III. The appeal to the ZBA was filed by the plaintiff pursuant to RSA 676:5, III, which governs only appeals from a planning board decision. The ZBA declined to reach any of the multiple claims of error before it, and instead dismissed the appeal on the basis that it was not timely filed. The plaintiff's motion for reconsideration was denied, and it appealed to the superior court pursuant to RSA 677:4. The intervenor moved to dismiss, arguing that the issues before the ZBA had already been decided in the direct appeal, and thus collateral estoppel applied.

The superior court concluded that collateral estoppel barred relitigation of issues already addressed in the direct appeal. It noted, however, that the plaintiff "was entitled to seek relief from the ZBA for that body's alleged errors," namely, the plaintiff's contention that the special exceptions were improperly granted (ZBA issues). The court faulted the ZBA for failing to "parse[] out the issues properly before it, i.e. those concerning its own decisions." The court, however, granted the motion to dismiss on the ZBA issues, concluding that the plaintiff failed to properly file a motion for rehearing of the grant of the special exceptions, and thus the appeal was not preserved. *See* RSA 677:2-:4. The plaintiff contended below that it was unable to file such a motion because the town failed to produce a notice of decision until February 1997. The superior court rejected that argument, stating that the plaintiff "never filed [a motion for rehearing], even after the formal notice of decision was produced by the town. Rather, [the plaintiff] elected to file with the ZBA a duplicative appeal from the planning board's decision."

We conclude that the superior court correctly dismissed the plaintiff's appeal for failure to satisfy the statutory prerequisites of RSA chapter 677. RSA 677:3, I, requires a party to file a motion for rehearing within twenty days of the decision complained of, and provides that "no ground not set forth in the application [for rehearing] shall be . . . given any consideration by a court." *See* *Dziama v. City of Portsmouth,* 140 N.H. 542, 544, 669 A.2d 217, 218 (1995) (decided under prior law). As the trial court noted, no such application was made. The appeal to the ZBA was made pursuant to RSA 676:5, III, governing appeals to the ZBA *from a decision of the planning board.* Even if we assume that that appeal could be treated as a motion for rehearing of the ZBA's grant of the two special exceptions, it would be untimely because it was filed with the ZBA more than twenty days after the notice of special exceptions was filed in the town office. *Cf. K & J Assoc. v. City of Lebanon,* 142 N.H. 331, 333, 703 A.2d 253, 254 (1997) (procedural deadlines must be complied with to establish jurisdiction in appellate body). Accordingly, we find no error.

To the extent that the plaintiff raised additional claims of error regarding the ZBA's grant of the special exceptions and the appeal therefrom, after a review of the briefs and record, we find them to be without merit and warranting no further review. *See, e.g., Vogel,* 137 N.H. at 322, 627 A.2d at 596.

*V. Jurisdiction*

Finally, the plaintiff asserts that the superior court, in the direct appeal, erred in concluding that the planning board properly granted site plan approval in light of what it argues was the improper grant of the special exceptions by the ZBA. After concluding that the plaintiff's argument was without merit because the board could have reasonably assumed that the ZBA's prior grant of the special exceptions was legal, the superior court stated:

> Moreover, [the plaintiff] has appealed the decision of the Conway Planning Board pursuant to RSA 677:15, and not a decision of the Conway Zoning Board of Adjustment pursuant to 677:4. Review of zoning board determinations would be beyond the scope of this appeal. *See* RSA 677:15 (providing jurisdiction for review of planning board decisions only). If [the plaintiff] is aggrieved by the decision(s) of the Conway Zoning Board regarding Druker's development, [the plaintiff] should have appealed same to the Superior Court pursuant to RSA 677:4.

(Citation omitted.) On appeal, the plaintiff not only asserts that the court improperly concluded that the board acted reasonably, but also challenges the subject matter jurisdiction decisions of the superior court in both the direct appeal and the ZBA appeal.

■■■ We address the plaintiff's jurisdictional claims first. As noted above, the plaintiff cannot now claim error on the part of the court in the appeal of the ZBA special exceptions because that appeal was not properly filed. We now review its argument that the superior court, in the direct appeal, should have reviewed the substance of the ZBA's grant of the special exceptions. The superior court, in the direct appeal, declined to address the propriety of the ZBA's decision-making on the basis that because the plaintiff filed the direct appeal under RSA 677:15, the court lacked jurisdiction beyond evaluating the decision of the planning board. We agree. RSA 677:15, I, provides:

> Any persons aggrieved by any decision of the planning board concerning a plat or subdivision may present to the superior court a petition, duly verified, setting forth that such decision is illegal or unreasonable in whole or in part and specifying the grounds upon which the same is claimed to be illegal or unreasonable. . . . This paragraph shall not apply to planning board decisions appealable to the board of adjustment pursuant to RSA 676:5, III.

Thus, under the plain meaning of the statute, *cf. Healey*, 140 N.H. at 236, 665 A.2d at 365, the superior court in the direct appeal could review only whether the board acted reasonably in granting subdivision approval in light of what the plaintiff alleges was an illegal grant of certain special exceptions.

As noted above, the superior court concluded that the board was not required to question and *sua sponte* review the propriety of the ZBA's decision to grant the special exceptions. The superior court noted that the plaintiff was expecting the board to take such action where "[t]here was no argument or evidence presented to the Board suggesting that the zoning board's decision was illegal or unreasonable, or that [the intervenor] was in violation of [the] applicable zoning ordinances." We conclude that the superior court did not err in determining that the board acted reasonably. First, the statutory framework of review set forth in RSA chapters 676 and 677 does not provide for planning board review of the ZBA, *cf.* RSA 676:5, III (ZBA review of the planning board's decision). Second, although the town regulations require the planning board to ensure that all other governmental approvals are obtained, TOWN OF CONWAY SITE PLAN REVIEW REGULATIONS § 123-11, and that a proposed subdivision plan is consonant with the health and welfare of community, *id.* § 123-2, they do not require the board to act as a review panel for other governmental entities. Thus, even though a planning board, "[b]efore exercising its discretion to grant or deny the requested subdivision, . . . must consider the proposal in a much broader context and in a depth consistent with *its duties* under all relevant statutes, ordinances, and regulations," *Victorian Realty Group v. City of Nashua*, 130 N.H. 60, 62, 534 A.2d 381, 383 (1987) (emphasis added), neither logic nor the underlying statutory and regulatory framework requires the board to assume that other public officials will not perform their duties lawfully. *Cf. Carter*, 113 N.H. at 418, 308 A.2d at 856.

In closing, to the extent that we did not address any other issues arguably raised by the plaintiff in its brief, we find that the plaintiff did not sufficiently develop those issues so as to warrant further review. *Cf. State v. Bennett*, 144 N.H. 13, 22, 737 A.2d 640, 647 (1999) (vague and insubstantial arguments will not be addressed); *Douglas v. Douglas*, 143 N.H. 419, 429, 728 A.2d 215, 222 (1999) (court will not consider mere laundry list of complaints); *Vogel*, 137 N.H. at 322, 627 A.2d at 596 (court will not address in detail meritless issues).

Because our extensive review of the record reveals no reversible error, we affirm the determinations of the superior court in both the direct appeal and ZBA appeal.

*Affirmed.*

BROCK, C.J., did not sit; JOHNSON, J., retired, sat by special assignment under RSA 490:3; the others concurred.