# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2019-0355, <u>Kevin B. Peets & a. v. Danny O'Malley & a.</u>, the court on April 9, 2020, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case.  See <u>Sup. Ct. R.</u> 18(1).  We affirm and remand.

The defendants, Danny O'Malley and Denise C. Vallee (now O'Malley), appeal an order of the Superior Court (<u>Ruoff,</u> J.) establishing the location of the common boundary between their real estate and that of the plaintiffs, Kevin B. Peets and Denise A. Peets.  They contend that the trial court erred by:  (1) misinterpreting the deeds that created the common boundary; (2) not finding the boundary established by adverse possession or acquiescence; and (3) fashioning a remedy that was an "abuse of equitable discretion."

We first address whether the trial court erred in interpreting the deeds that created the common boundary.  The determination of the location of a boundary is a question of fact, which we will not disturb on appeal if there is evidence to support it.  <u>Brown v. Rines</u>, 123 N.H. 489, 493 (1983).

In this case, on a recorded 1954 survey, the parties' lots were part of a single lot, having four straight sides, the bounds of which were identified by distance.  In 1964, the then-owner of the historical lot, who was not a surveyor, subdivided it into the two lots at issue in this case, one being the northern part and the other being the southern part of the historical lot, by creating a common boundary running in an east-west direction across the historical lot.  This common boundary is not represented on any survey.  The 1964 deed from the common owner to the defendants' predecessor in title described the common boundary as running from one iron pin to another iron pin, "westerly . . . 78 feet more or less" and referred to the 1954 survey "for a more particular description" of the lot.  The deed stated that it intended to convey the northerly part of the historical lot as shown on the 1954 survey.  In 1966, the original grantor deeded the southerly lot to the plaintiffs' predecessor.  That deed included the same reference to the 1954 survey and described the common boundary in the same way.  The plaintiffs acquired the southerly lot in 1997; the defendants acquired the northerly lot in 2007.

At trial, the plaintiffs' surveyor testified that the common boundary between the two lots could be located mathematically because the length of the parties' easterly and westerly boundaries respectively, when added together,

equaled the length of the easterly and westerly boundaries shown on the 1954 survey. He testified that one could locate the common boundary between the two lots by marking the points at which the parties' easterly and westerly boundaries connected and drawing a straight line between those two points.

The straight common boundary as determined by this method measured 73.47 feet, not 78 feet as stated in the parties' chains of title. However, the plaintiffs' surveyor also testified that there was no survey of the common boundary, that the person who created it was not a surveyor, and that 78 feet was probably just a "guess."

Both parties' surveyors testified that they did not locate an iron pin along the lots' westerly boundaries, but did find an iron pin in the road that runs along the lots' easterly boundaries. However, the plaintiffs' surveyor did not locate the common boundary beginning at that pin because that would have placed the easterly boundaries in the road, which was not part of the historical lot depicted in the 1954 survey.

The defendants' surveyor testified that if the pin in the road were used as the start of the common boundary: (1) the combined easterly boundaries would be 3.49 feet longer than that shown on the 1954 survey; and (2) the easterly boundaries would not be a straight line as shown on the survey. He further testified that it was not unusual for pins to be missing after 64 years and that "the pins along the road frontage are usually most susceptible to outside damage from road crews, culverts, [and] plowing." See id. (stating that the rule of deed construction that monuments prevail over courses and distances is an aid used to determine the intent of the grantor; it is not mandatory in the face of convincing proof of contrary intent); Reney v. Hebert, 109 N.H. 74, 75 (1968) (stating plain error in deed will be rejected and deed construed reasonably to conform to the intent of the parties). On this record, we conclude that the trial court's location of the common boundary is supported by the evidence. See Brown, 123 N.H. at 493.

We next address whether the trial court erred by finding that the evidence was insufficient to support the defendants' claims that the location of the common boundary was established by adverse possession or acquiescence. The defendants' adverse possession argument is not developed. See State v. Blackmer, 149 N.H. 47, 49 (2003). To establish a boundary by acquiescence, a party must prove that the parties: (1) are adjoining landowners; (2) have occupied their respective lots up to a certain boundary; (3) have recognized that boundary as the true boundary separating the lots; and (4) have done so for at least twenty years. O'Hearne v. McClammer, 163 N.H. 430, 435 (2012). A bound to which the parties have acquiesced will prevail even over the deed descriptions. Id. We review the trial court's legal rulings de novo, but defer to its findings of fact if supported by the record. Id. at 436.

2

In this case, the trial court viewed the properties. Defendant Danny O'Malley testified that the common boundary was south of certain timbers partially buried in the ground in an east-west line. On appeal, the defendants argue that the timbers establish the boundary by acquiescence. However, plaintiff Kevin Peets testified that he never considered the timbers to be the common boundary.

The defendants point to the location of their shed, fence, and drilled well as establishing a boundary by acquiescence. However, Peets testified that, during his ownership, both the defendants' shed and fence had moved south toward the plaintiffs' cottage without his notice or approval. Peets further testified that the defendants' well had been on the plaintiffs' side of the fence, but now was on the defendants' side. To the extent that the defendants argue that the location of their well controls the location of the common boundary, they point to no evidence that the well was not drilled on the plaintiffs' land. O'Malley testified that a snow plow had moved some of the timbers south toward the plaintiffs' cottage. Peets testified that the defendants and plaintiffs had not discussed the location of the common boundary. Cf. id. at 436 (finding boundary by acquiescence when abutting owners walked boundary together multiple times over years).

The defendants contend that the plaintiffs are equitably estopped from denying that they acquiesced to the boundary being the timbers because, in 1997, the designer of their septic system identified it as such and they asked the defendants' predecessor for written consent to place the system less than 10 feet from the timbers. However, the defendants did not raise this argument in the trial court until they moved for reconsideration of the final order, and the trial court did not address it. See Mt. Valley Mall Assocs. v. Municipality of Conway, 144 N.H. 642, 654-55 (2000) (stating party may not raise issue for the first time in motion for reconsideration when issue was readily apparent at time party initially filed for relief).

Moreover, the defendants do not point to any evidence that the plaintiffs, at the time of the septic design, knew that the timbers were not the common boundary. See Sunapee Difference v. State of N.H., 164 N.H. 778, 792-93 (2013) (stating that equitable estoppel requires a false representation or concealment of material facts made with knowledge of those facts). We conclude that the trial court's finding that the evidence was insufficient to establish a boundary by acquiescence is supported by the record and not legally erroneous. See O'Hearne, 163 N.H. at 436.

Finally, we address whether the trial court unsustainably exercised its discretion in fashioning a remedy. The trial court, after locating the common boundary, directed that: (1) its order and the plaintiffs' surveyor's sketch showing the common boundary be recorded; and (2) the defendants "remove all encroaching structures and related items within" 60 days.

The defendants argue that: (1) "there is no way to determine what structures encroach, and how far they must be moved" because the plaintiffs' surveyor's sketch does not show the location of the defendants' well, shed, and fence; (2) there is a "possibility" that their well encroaches on the plaintiffs' land; (3) the surveyor's sketch is not recordable; and (4) the plaintiffs sought only to have the defendants' shed moved. The defendants do not explain how any of these points show that the trial court unsustainably exercised its discretion in fashioning a remedy.

However, it is unclear from the trial court's order whether it intended to include the defendants' well within the meaning of the term, "structures." Accordingly, we remand for the trial court to clarify its order in that respect.

Affirmed and remanded.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,
Clerk**